IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 111,006
111,895

STATE OF KANSAS,
*Appellee*,

v.

MANUEL C. ALCALA,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 2014 Supp. 21-6604(a) does not authorize a district court to impose a no-contact order in conjunction with a sentence of incarceration.

2.

The district court's ability to order restitution for damages or loss under K.S.A. 2014 Supp. 21-6604(b)(1) depends on establishment of a causal link between the defendant's unlawful conduct and the damages. Setting an amount of restitution is within the district court's discretion, subject to a substantial competent evidence standard of review on appeal.

3.

Under K.S.A. 2014 Supp. 21-6604(b)(1), restitution is the rule and a finding that restitution is unworkable is the exception. It is the defendant's burden to come forward with evidence regarding an alleged inability to pay restitution.

1

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed April 24, 2015. Affirmed in part and vacated in part.

*Joanna Labastida*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Jodi E. Litfin*, assistant district attorney, argued the cause, and *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: This is a consolidated appeal from two aspects of Manuel C. Alcala's criminal sentence after he pleaded guilty to first-degree premeditated murder for killing his estranged wife. He challenges: (1) a no-contact order prohibiting communication with the victim's family; and (2) a restitution order requiring him to pay attorney fees incurred by the victim's mother in child in need of care (CINC) proceedings involving the couple's children and a separate legal action for her to adopt the children. We vacate the no-contact order and affirm the restitution order.

We have previously held that no-contact orders such as the one in this case constitute an illegal sentence because they are probation conditions that cannot be imposed in conjunction with prison sentences. See *State v. Bowen*, 299 Kan. 339, 359, 323 P.3d 853 (2014); *State v. Plotner*, 290 Kan. 774, 782, 235 P.3d 417 (2010). The State concedes the error and agrees the no-contact order must be vacated.

As to the restitution order, we affirm the district court. We hold that a sufficient causal link exists between Alcala's unlawful conduct and the attorney fees in the CINC proceedings and the adoption case. We hold further that the district court properly rejected the claim that any restitution plan was unworkable because Alcala failed to meet

2

his burden of proof on that issue by presenting evidence regarding his inability to pay upon release.

FACTUAL AND PROCEDURAL BACKGROUND

Alcala pleaded guilty to first-degree premeditated murder for killing his wife, Ashley Alcala, with whom he was in the process of divorce. The district court sentenced him to life imprisonment without parole for 25 years and ordered Alcala not to have contact with Ashley's family.

The State subsequently filed a notice of intent to seek restitution on behalf of Ashley's mother, Karren Bacon. The State wanted Alcala to reimburse Bacon for Ashley's funeral expenses and for attorney fees Bacon incurred in the CINC proceedings involving the couple's children, finalizing Bacon's adoption of those children, and probating Ashley's estate.

At the restitution hearing, the State put on testimony from Bacon and her attorney, James Willard. Bacon testified she hired Willard to help her retain custody of the children when the CINC proceedings began. Willard testified that Alcala's brother and sister-in-law initially attempted to gain custody of the children and that his representation was necessary to ensure Bacon got custody. Willard also described his services and fees in the CINC, adoption, and probate cases. Alcala offered no evidence but requested the court take judicial notice that he was incarcerated.

In a motion filed after the hearing, Alcala focused on the fees for the CINC proceedings, claiming that hiring an attorney was a personal choice Bacon made to represent her personal interests. And because of this, he argued, the causal connection with Alcala's crime was too attenuated. Alcala also argued Willard's fees in the CINC

3

case were excessive and unnecessary, noting for example that Willard charged for attending hearings in Alcala's criminal case. In an amended motion, Alcala argued restitution should be denied as unworkable because he was incarcerated and had no way to pay and the State had failed to prove he would work, or would be able to work, while imprisoned.

The State responded by arguing Alcala's crime, *i.e.*, killing Ashley, directly or indirectly caused the CINC case, noting Bacon was an "interested party" under state law in the CINC case, so it was logical and reasonable that Bacon, a nonattorney, would retain counsel. The State further urged the court to reject Alcala's claim about workability because he failed to put on evidence supporting a finding that restitution was unworkable, despite having the burden of proof. The State also contended there was no legal authority that incarceration alone renders a restitution plan unworkable.

The district court sided with the State, ordering Alcala to pay restitution to Bacon totaling $43,230.77. That total broke out as follows: $17,717.22 for funeral and cemetery expenses; $18,107 for attorney fees in the CINC proceedings; $3,000 for attorney fees for the adoption; and $4,406.55 for attorney fees and expenses for the estate probate proceedings. The court specifically found Alcala's acts "did, in fact, cause those expenses which are declared, by the Court, to be reasonable." The court further held it did not find exceptional circumstances rendering the restitution plan unworkable and did not expressly order restitution payable while Alcala is incarcerated. The court partially enforced the restitution order after it was entered by paying out assets previously seized from Alcala.

Alcala timely appealed the no-contact order and the finding that Ashley's murder caused the attorney fees Bacon incurred in the CINC proceedings and the adoption case. Alcala does not challenge the reasonableness of the attorney fees awarded in the CINC

4

proceedings and adoption case, nor does he challenge the restitution ordered for the funeral/cemetery and probate expenses.

Jurisdiction is proper. See K.S.A. 2014 Supp. 22-3601(b)(3) (direct appeal to Supreme Court when life sentence imposed).

THE NO-CONTACT ORDER

The parties correctly agree that the district court's no-contact order is an illegal sentence and must be vacated. A no-contact order is a probation condition. It is inappropriate to combine a no-contact order with a prison sentence because to do so exceeds a sentencing court's authority under K.S.A. 2014 Supp. 21-6604(a). See *Bowen*, 299 Kan. at 359 (life sentence and no-contact order inappropriate combination of dispositions under K.S.A. 21-4603d[a], recodified as K.S.A. 2014 Supp. 21-6604[a]). "The appropriate remedy is to vacate the no-contact order but leave the remainder of the sentence intact." 299 Kan. at 359.

In line with our caselaw, we hold that the no-contact order should be vacated, while leaving intact the remainder of Alcala's sentence. See *Plotner*, 290 Kan. at 782; *State v. Post*, 279 Kan. 664, 669, 112 P.3d 116 (2005).

RESTITUTION FOR ATTORNEY FEES

Alcala argues the attorney fees for the CINC proceedings and adoption case are too causally remote from his criminal conduct because they are only "an indirect and tangential expense related to [the] crime." He also suggests the CINC attorney fees are not recoverable because they could have been paid through the CINC case. See K.S.A. 2014 Supp. 38-2241(d) (interested party status to any person with whom the child has resided for a significant period of time within 6 months of filing CINC proceedings);

5

K.S.A. 2014 Supp. 38-2205(c) (authorizing district court to appoint attorney for an interested party with status under K.S.A. 2014 Supp. 38-2241[d]).

In addition to arguing the causation issue, the State raises an initial preservation question as to the adoption fees because Alcala failed to challenge them in his amended motion to the district court after the restitution hearing. The State contends this failure amounts to an implicit waiver. But this concern does not take into account Alcala's arguments at the hearing in which he challenged generally all restitution sought by the State—particularly on the question subject to this appeal—causation. And the district court in its restitution order found each item of attorney fees was caused by Alcala's crime. Accordingly, we will consider the fee awards for both the CINC proceedings and the adoption.

*Standard of Review*

In reviewing a district court's restitution award, factual findings underlying the causal link between the crime and the loss are reviewed for substantial competent evidence. The restitution amount and the manner in which restitution is to be made are reviewed for abuse of discretion. *State v. Hall*, 298 Kan. 978, 989, 319 P.3d 506 (2014) (quoting *State v. Hand*, 297 Kan. 734, 736-37, 304 P.3d 1234 [2013]).

*Discussion*

K.S.A. 2014 Supp. 21-6604 sets out the dispositions a district court may adjudge when a person is convicted of a crime, including restitution. K.S.A. 2014 Supp. 21-6604(b)(1) states:

"In addition to or in lieu of any of the [dispositions authorized by subsection (a)], the court shall order the defendant to pay restitution, which shall include, but not be limited to, *damage or loss caused by the defendant's crime*, *unless the court finds compelling circumstances which would render a plan of restitution unworkable*." (Emphasis added.)

We consider first Alcala's suggestion that attorney fees in the CINC case should not qualify for restitution because Bacon could have had court-appointed counsel. This argument is without merit for at least two reasons. First, Alcala made no showing that Bacon would have been financially unable to employ an attorney, which is a statutory prerequisite for court-appointed counsel under the CINC statute. See K.S.A. 2014 Supp. 38-2205(c). He simply makes the conclusory argument that "[s]he could have been entitled to appointed counsel in the CINC case, negating the fees necessary for a private attorney." Second, the argument that Bacon could have secured court-appointed counsel is really an issue regarding the reasonableness of the expenses incurred because appointed counsel is also entitled to compensation, *i.e*., this argument concerns the difference in costs between hired and appointed counsel, rather than a circumstance that breaks the causal link between the crime and the expenses. But Alcala did not appeal the district court's determination that the expenses Bacon incurred were reasonable, so we cannot consider whether the restitution award might have been less had Bacon been represented by counsel appointed by the CINC court. Accordingly, the controlling question remains whether Bacon's attorney fees in the CINC proceedings are "damage or loss caused by" the murder. See K.S.A. 2014 Supp. 21-6604(b)(1).

Under the statute's causation language, "'"restitution for a victim's damages or loss depends on the establishment of a causal link between the defendant's unlawful conduct and the victim's damages."'" *Hall*, 298 Kan. at 990 (quoting *State v. Goeller*, 276 Kan. 578, 580-81, 77 P.3d 1272 [2003]). But the realities of attributing the consequences of criminal conduct present a range of possibilities for restitution—some more easily

resolved than others. For example, losses directly or immediately caused by criminal conduct, such as injuries to persons or property, are clearly compensable as restitution. See *Goeller*, 276 Kan. at 582-83 (causation requirement met in DUI case to compensate victim for medical bills incurred after collision with intoxicated defendant who drove his vehicle left of center); *State v. Sammons*, 276 Kan. 574, 576-77, 78 P.3d 470 (2003) (restitution for value of tools stolen and not recovered because victim would have use of the tools but for the theft).

But the issue presented in this case resides somewhere toward the other end of the spectrum—where the outcome has not been so clear because the losses were more tangentially caused by the criminal conduct. Compare *Hall*, 298 Kan. at 991 (upholding restitution for sexual assault victim's relocation expenses when defendant lived and worked in same apartment complex and law enforcement advised victim to move for her safety); *Hand*, 297 Kan. at 739-40 (increased insurance premium due to theft claim against policy); and *State v. Beechum*, 251 Kan. 194, 202-03, 833 P.2d 988 (1992) (upholding restitution award for costs of moving murder victim's child to child's other parent); with *State v. Hunziker*, 274 Kan. 655, 657-58, 664-68, 56 P.3d 202 (2002) (discretion abused by awarding victim's attorney fees for advising on court procedures and preparation of a "restitution booklet" detailing losses caused by vandalism).

*Hall* and *Beechum* are particularly relevant. In *Hall*, the court found substantial competent evidence supported a causal link between the attempted rape at the victim's apartment complex by a resident-employee of that complex and the victim's relocation expenses, consisting of moving van rental and a security deposit. 298 Kan. at 990-91. The *Hall* court concluded the award was supported by evidence that the victim suffered physical injuries, the attacker worked and resided at the victim's apartment complex, and police told her to relocate for her safety and to avert possible harm. This court held the

relocation expenses could "be fairly regarded as caused by [the defendant's] crime of attempted rape." 298 Kan. at 991.

In *Beechum*, the district court awarded restitution to a murder victim's son and the child's father for airfare to transport the child to the father's home and the father's lost wages when accompanying the child on the trip. The *Beechum* court rejected the defendant's argument that the costs were too tangential, holding:

> "Restitution orders must have limitations. Not all tangential costs incurred as a result of a crime should be subject to restitution. . . . Because of [the defendant's] crime, the victim's son went to New York to live with his father. The father lost work to accompany his son. The expenses incurred resulted from and were caused by [the defendant's] crime. The trial court did not abuse its discretion in ordering restitution." 251 Kan. at 203.

The attorney fees in Alcala's case present a similar question of tangential costs. The evidence established some causal connection between the crime and the attorney fees because, but for the murder, there would have been no CINC or adoption cases. And Bacon, as the children's grandparent and person with whom the children were placed after their mother's murder, was a statutory interested party in the CINC proceedings, who was entitled to participate in the CINC case. See K.S.A. 2014 Supp. 38-2241(c) and (d). On the other hand, the attorney's services were necessary so Bacon could get custody of the children to the exclusion of others who sought custody. In other words, though the CINC case itself was caused by the murder, Bacon's participation may be seen as serving a personal purpose, in addition to aiding in the children's placement. And as Alcala points out, the children's interests were represented in the CINC proceedings by guardians ad litem. See K.S.A. 2014 Supp. 38-2205(a) (directing district court to appoint attorney to serve as guardian ad litem for children subject to CINC proceedings).

9

As to the CINC proceedings, we hold that the relationship between Alcala's criminal conduct and the attorney fees is not so tangential as to remove the district court's discretionary authority to award them as restitution under the statute. See *Beechum*, 251 Kan. at 203. Alcala's killing of his wife, who was also the mother of his children, set in motion a foreseeable chain reaction regarding the children's placement. After the murder Alcala was the children's only living parent, and he was incarcerated for having committed the crime. A child in need of care proceeding was the obvious next step. See K.S.A. 2014 Supp. 38-2202 (d)(1) (child in need of care includes person less than 18 who is without adequate parental care, but not due solely to parent's lack of financial means).

Once CINC proceedings were initiated, it was reasonable that one or more interested parties, as that term is defined by law, would participate in the court's determination of the children's best interests in terms of temporary and permanent placement. See K.S.A. 2014 Supp. 38-2241. An interested party's need for an attorney follows from the right to participate in the proceedings and is a recognized incident of such participation under K.S.A. 2014 Supp. 38-2205(c). The CINC proceedings and the attorney fees Bacon incurred to participate in the proceedings can be "fairly regarded as caused by" the murder. See *Hall*, 298 Kan. at 991. Accordingly, we hold that substantial competent evidence establishes that the attorney fees in the CINC proceedings were "caused by the defendant's crime." K.S.A. 2014 Supp. 21-6604(b)(1).

As to the fees for completing the adoption, we similarly see a causal link to the crime. This expense, to secure custody of the children left in Bacon's charge as a result of Ashley's murder, is indistinguishable from the expenses approved in *Beechum* to transfer custody of the murder victim's child to the child's other parent. We hold that substantial competent evidence of causation existed to sustain the district court's decision to include this expense in the restitution award.

10

Finally, Alcala argues the district court erred in ordering restitution because the restitution plan is unworkable. He bases this assertion on his lengthy prison sentence and limited earning potential while incarcerated. This argument has no merit.

Under K.S.A. 2014 Supp. 21-6604(b)(1), restitution is the rule and a finding that restitution is unworkable is the exception. *Goeller*, 276 Kan. at 583. The burden is on the defendant to come forward with evidence of "compelling circumstances" that render the restitution plan unworkable. See K.S.A. 2014 Supp. 21-6604(b)(1); *Goeller*, 276 Kan. at 583 (concluding statute made restitution the rule and required defendant to produce evidence to support claimed inability to pay underlying argument that restitution was unworkable). Defendant's imprisonment alone is not sufficient to render restitution unworkable. See 276 Kan. at 583.

The district court did not order Alcala to pay a fixed amount of restitution per month, nor did it explicitly order Alcala to begin payments while incarcerated. This indicates further restitution will not be collected until he is paroled, if that ever occurs. See *State v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014) (restitution not due while prisoner incarcerated unless district court unambiguously declares contrary intent on the record). Having presented no evidence of his inability to pay restitution after his possible parole, Alcala failed to sustain his burden of demonstrating the restitution plan was unworkable.

In summary, the district court's no-contact order is vacated. The district court's restitution order is affirmed.

Affirmed in part and vacated in part.

11