NOT DESIGNATED FOR PUBLICATION

No. 112,879

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KARL SHAWN REINHARD,
*Appellant.*

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed September 11, 2015. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Kyle Edelman*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN, J., and JEFFREY E. GOERING, District Judge, assigned.

LEBEN, J.: Karl Reinhard twice rammed his car into his neighbor's parked minivan hard enough to push it into the yard, causing about $4,000 in damage to the minivan. Reinhard pled guilty to criminal damage to property, a felony. Meanwhile, his neighbor moved his family out of its home for fear of Reinhard.

The district court ordered Reinhard to pay $1,413.43 in restitution, which included costs for the neighbor, Marvin Wingert, to relocate. Included in that amount was the $649 security deposit for the apartment Wingert's family initially moved to. By the time of the

restitution hearing, however, Wingert had moved to a second apartment, using that $649 toward the greater deposit required there.

Reinhard challenges the award of these restitution costs on appeal, targeting his argument on the $649 security deposit.

When a person is sentenced to probation, as Reinhard was, K.S.A. 2014 Supp. 21-6607(c)(2) allows a restitution award for "damage or loss caused by the defendant's crime." Our courts have read this to allow a restitution award either when the damage was caused by the crime or when a defendant agrees to the restitution in a plea bargain. *State v. Dexter*, 276 Kan. 909, Syl. ¶ 3, 80 P.3d 1125 (2003); *State v. Miller*, No. 111,573, ___ Kan. App. 2d ___, Syl. ¶ 1, ___ P.3d ___ (2015). Here, Reinhard entered a plea bargain under which he pled guilty to the single criminal-damage-to-property charge and the State dismissed separate charges of battery (for an earlier incident involving Wingert) and charges of child endangerment (shortly before ramming Wingert's van, Reinhard had gotten mad and intentionally run into a curb with his daughters in the car). But Reinhard did not agree to pay restitution for the Wingerts' relocation expenses, so the court could award them only if they were caused by the crime for which Reinhard was convicted—criminal damage to property.

We begin our discussion with the circumstances that led up to the Wingert family move. The Wingerts had lived in the home where the minivan was struck since 1998. At the time of the incident, Wingert, his wife, and their 13-year-old daughter lived in that home.

Reinhard moved in next door to Wingert in 2012. In July 2012, the two had an incident resulting in the misdemeanor battery charge against Reinhard that was dismissed as part of the plea bargain. Reinhard damaged Wingert's minivan in November 2012. Although the Wingerts owned the home next to Reinhard, they moved to an apartment at

the beginning of December 2012. The family moved to a second apartment in August 2013 and was still living there 1 year later when the restitution hearing took place.

Wingert said that the minivan incident was the fourth or fifth example of "violence-based behavior" by Reinhard against Wingert or his family members. He said that his wife was disabled, his daughter was only a teen, and "for their safety [he] felt it was much better to relocate . . . ."

The home Wingert owned remained vacant for about 6 months; he then rented it out—but for $350 less each month than he was paying for the mortgage. Wingert paid a $70 application fee and $649 security deposit to the apartment owner of the first place he moved. He also paid $55.16 for a rental truck to move his possessions and $22.77 for gas for the truck.

When Wingert moved his family to the second apartment complex, he received his $649 security deposit back. Wingert testified that he used it toward the $850 deposit required at the new place.

To support its argument that the district court should require Reinhard to pay restitution for these expenses, the State cited *State v. Hall*, 298 Kan. 978, 319 P.3d 506 (2014). In *Hall*, the victim of an attempted rape moved from her apartment complex, where the defendant was a maintenance worker, for her safety. The district court awarded restitution for the cost of a rental truck used to move her belongings and for the security deposit on a new apartment. The Kansas Supreme Court affirmed the award of both, noting that while tangential costs incurred as a result of a crime are not always subject to restitution, the damage or loss caused by the crime need not be directly caused by the crime either. There was a sufficient causal link between the victim's relocation costs and the attempted rape for which the defendant was convicted. 298 Kan. at 990-91.

3

Reinhard's attorneys before the district court and here recognize that *Hall* supports the award of relocation costs, but they have argued essentially that the security deposit here is too tangential. Here, unlike *Hall*, the victim has moved twice—and he got back the security deposit he put down on the first place he moved after Reinhard's offense.

The district court first noted that had the Wingert family remained at the first apartment, *Hall* would support awarding restitution for the $649 security deposit. The court next concluded that there was no real difference between the *Hall* situation and our case—the Wingerts used the same $649 as part of the security deposit at the second apartment.

On appeal, we apply different standards of review to the district court's restitution orders based on what is actually at issue. The district court's factual finding that a loss was caused by the crime of conviction must be supported by substantial evidence. Issues regarding the amount of restitution and the manner in which it is to be paid are reviewed only for abuse of discretion. And interpretation of the statute authorizing restitution is a legal issue that we review independently, without any required deference to the district court. *State v. Hand*, 297 Kan. 734, 736-37, 304 P.3d 1234 (2013); *Dexter*, 276 Kan. at 912-13.

The district court's factual finding here that Reinhard's crime caused the Wingert family's move is supported by substantial evidence. Wingert testified that he moved to keep his family safe. And while he testified that other "violence-based behavior" had also influenced the move, it's significant that the Wingerts moved at the start of the month following this crime.

That analysis is enough to affirm the district court's award of the sums spent on a rental application fee, a rented moving truck, and gas for the move. But we still must specifically consider the security deposit, which was first used at one apartment and then

4

at another. There are both factual and legal questions here. Some expenses can be too tangential to be legally recoverable. See *State v. Alcala*, 301 Kan. 832, 837-39, 348 P.3d 570 (2015). We know from *Hall* that had the Wingert family just moved once, the security deposit would not have been too tangential to the crime to be recovered. Does a second move—using the same funds for a second security deposit—make the amount unrecoverable as restitution?

We think not. As the trial court said, "They used that same deposit to move to another location." And they made these moves out of legitimate concerns about their safety. Reinhard had certainly shown an inability to control his anger, and by leaving their home—where the Wingerts and Reinhard were next-door neighbors—the Wingerts reasonably defused the situation.

The district court did not award (nor did the State seek on the Wingerts' behalf) the higher security-deposit amount required by the second apartment. The court awarded merely what had been required to quickly and reasonably move the Wingerts to a new home, a move caused by the defendant's crime.

Reinhard's appellate brief asked for the entire restitution award to be vacated and a new hearing ordered, but the brief provided a specific argument only against the $649 security deposit. Besides the relocation costs, the court also awarded $617 related to damage to the van, representing the amount of the van's value that wasn't paid to the bank with a security interest in the van (the insurance company had reduced its payment by Wingert's $500 deductible and another $117 for other items). Because Reinhard made no specific argument against these restitution amounts, he has waived appellate review of their award. See *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 10, 303 P.3d 680 (2013). In any case, of course, Reinhard directly caused damage to Wingert's minivan—and the vehicle was declared a total loss. Wingert owed more to his lender than the vehicle was worth, so

5

he had to continue to pay on it, but the district court's award was limited to the actual value of the vehicle less the amount the insurance company actually paid.

Reinhard raised one other technical argument in his brief. He argued that the district court never explicitly said that Wingert's moving expenses were caused by Reinhard's crime. But Reinhard did not object to the district court's failure to make more detailed factual findings. Ordinarily, when neither party objects to the adequacy of a district court's factual findings, we can presume that the court found all the necessary facts to support its judgment. *State v. Herbel*, 296 Kan. 1101, 1119, 299 P.3d 292 (2013). We do not hesitate to do so here. The parties were arguing the causation question at the restitution hearing before the district court, and its discussion there makes clear that it understood the issue. The district court impliedly concluded that the restitution amounts awarded were caused by the crime of conviction.

The district court's judgment is affirmed.