NOT DESIGNATED FOR PUBLICATION

No. 117,658

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS
*Appellee*,

v.

GARRETT PRESLEY KRAFT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sherman District Court; SCOTT SHOWALTER, judge. Opinion filed April 20, 2018. Vacated and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Amanda G. Voth*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and MCANANY, JJ.

MALONE, J.: Garrett Presley Kraft appeals his sentence following his conviction of one count of possession of methamphetamine and one count of criminal restraint. Kraft claims the district court erred in pronouncing his sentence, erroneously sentencing him to a term of incarceration instead of probation. Kraft also claims the district court erred in ordering him to pay restitution for damages not directly caused by his crimes of conviction. For the reasons stated herein, we remand for the district court to reconsider the restitution order and to clarify Kraft's term of probation.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts supporting the criminal charges are taken from the affidavit of probable cause filed with the district court. On May 12, 2016, Haley Fryback went to the hospital after Kraft physically abused her during an argument in their mutual home. Fryback reported that Kraft hit, choked, and kicked her in the throat. He also prevented her from leaving the residence when he locked her keys and phone in a safe. Fryback told a Sheriff's deputy that she and Kraft had gone to Colorado to purchase methamphetamine and that their home contained drug paraphernalia as well as many items of stolen property. A search of the home revealed a small bottle containing liquid residue which field-tested positive for methamphetamine, along with other items of drug paraphernalia.

On May 13, 2016, the State charged Kraft with one count each of possession of methamphetamine, a severity level 5 drug felony; criminal restraint, a class A misdemeanor; domestic battery, a class B misdemeanor; possession of marijuana, a class A misdemeanor; and possession of drug paraphernalia, a class A misdemeanor. Kraft ultimately waived his right to a preliminary hearing. On November 14, 2016, pursuant to a plea agreement, Kraft pled guilty to possession of methamphetamine and criminal restraint in exchange for dismissal of the other charges. At the plea hearing, the State indicated that there was a "possibility" of restitution, as there was a question about whether Fryback's wallet and diary had been returned to her. As for the factual basis for the plea, Kraft stated in open court, "I was in possession of Methamphetamines in Sherman County and I [inaudible] somebody in the premises of my house." The district court accepted the plea as to possession of methamphetamine and criminal restraint and dismissed the remaining charges including domestic battery.

At the sentencing hearing on February 13, 2017, the State notified the district court that there was "a substantial amount of restitution" being requested by Fryback for her medical bills amounting to about $47,000. The parties agreed that the restitution issue

would be addressed at a separate hearing. Pursuant to the recommendations in the presentence investigation report, the district court sentenced Kraft to 17 months' imprisonment for the possession of methamphetamine conviction and a concurrent term of 6 months in jail for the criminal restraint conviction. Although the district court noted that there was "a presumption [of] probation found in this matter," the district court did not expressly state a term of probation. However, the district court informed Kraft that he was expected to meet and exceed the expectations of his community corrections officer, and discussed the penalties for not doing so. The journal entry of sentencing indicated that Kraft received a controlling sentence of 17 months' imprisonment and that he was placed on probation for 12 months.

The district court held a restitution hearing on April 10, 2017. At the hearing, Fryback testified about medical bills she had incurred since the incident on May 12, 2016. The State asked Fryback questions about the unpaid balance of each bill after insurance, but the bills were never admitted into evidence at the hearing. Specifically, Fryback testified about six medical bills for which she was requesting restitution. The first medical bill was in the amount of $891.83 for her emergency room visit on May 12, 2016. Fryback testified that she visited the emergency room that day because: "My organs were shutting down and I had been beaten pretty badly." Fryback's second medical bill was in the amount of $287.45 for a lab test on her kidneys.

Third, Fryback testified about a $3,362 medical bill she had incurred for "lab tests that the psychiatrist had run." The record contains no further explanation for this particular bill. Fourth, Fryback testified about a $1,260.94 bill she had incurred for inpatient mental health treatment at Sovereign Health of California. Fryback attributed this treatment to her dependency on Kraft and the fact that she was "still very attached, and romanticizing on him."

Fifth, Fryback testified about a $3,662 medical bill for additional lab tests and an MRI on her kidney. The testimony about this medical bill was very brief, but apparently this bill was for lab tests that were separate from the original lab tests which totaled $3,362. Finally, Fryback testified that she had incurred a $125 medical bill for outpatient therapy at High Plains Mental Health. Fryback attributed her mental health counseling to the long-term mental and physical abuse she had suffered during her six-month relationship with Kraft. In particular, Fryback testified as follows:

"Q. Explain to me why, when I asked you earlier, why do you think Mr. Kraft is responsible for these amounts that you incurred seeking mental health treatment, following the May incident?

"A. After everything I didn't know, I didn't want to wear make up, I didn't want to dress a certain way, I didn't think I could really do anything at all. I was too stupid, I had no capability to do anything at all without his say or what he preferred. I thought if I did not have him to take care of me or be there that I would essentially die and that there was no point in being alive.

"Q. Why did you think you needed Mr. Kraft to take care of you or be there for you?

"A. Because I had been conditioned to that point.

"Q. What do you mean you had been conditioned to that point?

"A. Over months he had obtained control of every single aspect of my life.

"Q. In what way?

"A. Emotionally, physically, financially."

At the conclusion of the evidence, the State attempted to sum up Fryback's total claim for restitution. In reviewing the medical bills, the prosecutor indicated that the bill for the lab tests ordered by the psychiatrist was in the amount of $3,662, even though the evidence indicated the bill was for $3,362. The State argued that Kraft was responsible for the entire claim of restitution, specifically asserting that: "This was not a single incident of abuse, but a long period of abuse, verbal, mental, and physical abuse." Kraft's

4

counsel argued that the State did not meet its burden to prove a causal link between Kraft's crimes of conviction and the claims of restitution.

In ruling from the bench, the district court did not make specific findings as to each of the claimed medical bills or whether there was a causal connection between each bill and Kraft's crimes of conviction. However, the district court asserted that Fryback's damages were "so closely entwined" with the criminal restraint conviction that it could not split out the damages that were specifically caused by the criminal restraint. Under the circumstances, the district court granted restitution for the entire claim of damages. A journal entry was later filed granting restitution in the amount of $9,889.22.

Kraft raises two issues on appeal. First, Kraft claims the district court erred in pronouncing his sentence, erroneously sentencing him to a term of incarceration instead of probation. Second, Kraft claims the district court erred in ordering him to pay restitution for damages not directly caused by his crimes of conviction. We will address these issues in reverse order.

CLAIM FOR RESTITUTION

Kraft claims the district court erred in ordering him to pay nearly $10,000 in restitution to Fryback since there is no direct causal relationship between his crimes of conviction and the costs included in the restitution order. In response, the State contends that Kraft's psychological control over Fryback, including restraining her from leaving their residence, provides enough of a causal link to his crimes of conviction to support the district court's order.

Appellate review of an order directing a criminal defendant to pay restitution can involve three standards of review. If the issue concerns the "'amount of restitution and the manner in which it is made to the aggrieved party,'" the order is reviewed under the abuse

5

of discretion standard. The district court's factual findings linking the crime committed and the victim's loss will be affirmed if these finding are supported by substantial competent evidence. Finally, an appellate court's review of legal questions involving the interpretation of underlying statutes is subject to unlimited review. *State v. Shank*, 304 Kan. 89, 93, 369 P.3d 322 (2016).

Because the issue here is whether there is a causal link between the victim's loss and Kraft's crimes of conviction, we must determine whether the district court's factual findings are supported by substantial competent evidence. Substantial evidence refers to legal and relevant evidence that a reasonable person would accept as being adequate to support a conclusion. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015).

There are two statutes that govern the payment of restitution in criminal cases. K.S.A. 2017 Supp. 21-6604(b)(1) requires that any restitution ordered in a criminal case must be based on "damage or loss caused by the defendant's crime." Similarly, K.S.A. 2017 Supp. 21-6607(c)(2) states that as a condition of probation, the defendant can be ordered to "make reparation or restitution to the aggrieved party for the damage or loss caused by the defendant's crime." The two statutes were enacted together as part of the revised Kansas Criminal Code, are closely related, and should be construed together. *State v. Miller*, 51 Kan. App. 2d 869, 872, 355 P.3d 716 (2015).

Based on the language of the controlling statutes, it is clear that in Kansas an order for restitution in a criminal case depends upon the establishment of a causal link between the defendant's crime and the victim's damages. *State v. Alcala*, 301 Kan. 832, 837, 348 P.3d 570 (2015). However, our Supreme Court has determined that the requirement of a causal connection may be satisfied if the loss was either directly or indirectly caused by the crime. See *State v. Hall*, 298 Kan. 978, 990, 319 P.3d 506 (2014). Finally, a defendant may be ordered to pay restitution when he or she has agreed to do so as part of

a plea agreement, even if the crime of conviction is not causally related to the damage or loss. See *State v. Dexter*, 276 Kan. 909, 919, 80 P.3d 1125 (2003).

Kraft was convicted of possession of methamphetamine and criminal restraint. The State initially charged Kraft with domestic battery; however, the State dismissed this charge pursuant to the plea agreement. Although the written plea agreement contained a general reference to the payment of restitution, the parties did not reach a specific agreement on the amount of restitution Kraft would be required to pay. The parties do not argue that Kraft's drug conviction supports a claim for restitution. Thus, the issue on appeal is whether there is any causal connection between the claimed restitution and Kraft's conviction of criminal restraint.

Both parties point to decisions issued by other panels of this court to support their positions. Kraft argues that *Miller* supports his claim. In that case, the defendant pled guilty to burglary and theft of a machete and baby powder. At the restitution hearing, the State introduced evidence of damages caused by the removal of copper piping and wiring from the home. The district court ordered restitution, including the amount of damages from the copper removal. On appeal this court vacated the restitution order because the damages caused by the removal of copper piping and wiring were not a direct result of the crimes for which the defendant was actually convicted. 51 Kan. App. 2d at 874. Kraft argues that this court "should continue to adhere to *Miller*" and uphold a restitution order only when a victim's damages are directly caused by the defendant's crime of conviction.

The State argues that the reasoning in *State v. Futrell*, 53 Kan. App. 2d 272, 387 P.3d 176 (2016), *rev. granted* 306 Kan. 1323 (2017), supports its position. In *Futrell*, the defendant pled no contest to burglary of the victim's home, and in exchange, the State dismissed the charges of burglary and theft of the victim's motor vehicle. At sentencing, the district court ordered the defendant to pay restitution for cash taken from the home, even though the defendant was not convicted of theft. On appeal, the majority determined

that "Futrell's burglary was, analogously, at the very least an indirect cause of [the victim's] loss of the $600 taken from his house." 53 Kan. App. 2d at 279. The majority affirmed the portion of the district court's restitution order requiring the defendant to restore the stolen cash taken from the home because it was "sufficiently connected factually and legally to the crime of conviction [burglary of the home] to be covered under K.S.A. 2015 Supp. 21-6607(c)(2)." 53 Kan. App. 2d at 282.

More recently, in *State v. Srader*, No. 116,387, 2018 WL 560180 (Kan. App. 2018) (unpublished opinion), the defendant was charged with leaving the scene of an accident, making a false information, and aggravated battery. The charges arose from an incident where the defendant side-swiped a vehicle, throwing the other driver from her vehicle resulting in injuries. The State dismissed the aggravated battery charge pursuant to a plea agreement. The district court ordered restitution to the other driver for medical bills she incurred as a result of her injuries in the car accident. On appeal, this court found there was no evidence that the defendant's crimes of conviction—leaving the scene of an accident and making a false information—were either directly or indirectly the cause of the victim's damages to support the claim of restitution. 2018 WL 560180, at *4.

An important case on restitution not discussed by the parties is our Supreme Court's decision in *Hall*. In that case, Hall was ordered to pay restitution after he pled guilty to attempted rape and other crimes. The victim of the attempted rape lived in the apartment complex where Hall worked, which was where the crime occurred, and the restitution order included the victim's moving expenses. 298 Kan. at 981. On appeal, Hall argued that the moving costs should not have been included in the restitution order because the crimes did not directly cause the relocation expenses. Our Supreme Court disagreed, stating that the victim's relocation costs were caused by Hall's crimes and that the restitution order properly included those costs. 298 Kan. at 990. The court stated that "[a]lthough not all tangential costs incurred as a result of a crime should be the subject of restitution, [citation omitted], there is no requirement that the damage or loss be 'directly'

caused by the defendant's crime." 298 Kan. at 990. *Hall* stands for the proposition that the requirement of a causal link between the defendant's crime and the victim's loss may be satisfied if the loss was either directly or indirectly caused by the crime.

Our Supreme Court recently addressed the issue of what constitutes sufficient causation to support a claim for restitution in *State v. Arnett*, 307 Kan. ___, ___ P.3d ___, No. 112,572, filed March 23, 2018. In that case, Arnett was convicted of conspiracy to commit burglary based on the fact that she loaned her mother's car to two individuals so they could break into houses. The other two individuals then burglarized two different houses, damaging one in the process, and stole over $50,000 worth of property. One of the individuals returned the car to Arnett later that evening and gave her $200. The State sought $33,248.83 in restitution—$31,646.66 for property loss from the thefts, $402.17 for "out-of-pocket expense[s]" of one of the homeowners, and $1,200 for damage to one of the homes as a result of the burglary. Slip op. at 3.

The district court ruled that Arnett was liable for the entire amount of restitution because the applicable statute authorized the court to order restitution for the damages caused by Arnett's crime, and Arnett had aided and abetted the crimes that resulted in the damages when she provided the vehicle. Slip op. at 5. The Court of Appeals vacated the restitution order, finding that Arnett's crime of conspiracy to commit burglary did not cause the damages. Slip op. at 4.

On a petition for review, our Supreme Court first noted K.S.A. 2016 Supp. 21-6607(c)(2) provides that as a condition of probation the court shall order the defendant to pay restitution to the aggrieved party for the damage or loss caused by the defendant's crime. Slip op. at 8. The court then discussed some of its prior decisions that held that the requirement of a causal connection may be satisfied if the victim's loss was either directly or indirectly caused by the defendant's crime. Slip op. at 8-9. The court acknowledged that there must be some limit to a defendant's liability for restitution, and noted that in

9

both the criminal and civil context, a showing of causation requires that one thing be the "proximate cause" of another. Slip op. at 9. Our Supreme Court then formulated a two-part test for courts to use in evaluating proximate cause between a victim's loss and the defendant's crime, sufficient to support an order for restitution in a criminal case:

> "To establish that one thing proximately caused another, a party must prove two elements: cause-in-fact and legal causation. Generally, causation-in-fact requires proof that it is more likely than not that, but for the defendant's conduct, the result would not have occurred. Legal cause limits the defendant's liability even when his or her conduct was the cause-in-fact of a result by requiring that the defendant is only liable when it was foreseeable that the defendant's conduct might have created a risk of the harm and the result of that conduct and any contributing causes were foreseeable." *Arnett*, 307 Kan. ___, Syl, ¶ 5.

The court then stated although normally it would remand the case to the district court for reconsideration of the restitution order under the proper legal standard, remand was unnecessary in Arnett's case because it was "clear from the record that the district court utilized [the proper] standard in its analysis." Slip op. at 11. Based on factual findings the district court made when ruling from the bench, the court stated that "it is apparent to us that the district court concluded that, but for Arnett's crime, the subsequent crimes which resulted in the damages would not have occurred and that the resulting damages were a foreseeable result of Arnett's criminal actions." Slip op. at 11. Thus, our Supreme Court upheld the district court's restitution order on the issue of causation, but it remanded the case to the Court of Appeals so it could address arguments presented in Arnett's brief that were not addressed by the court in its earlier ruling. Slip op. at 12.

To sum up the *Arnett* ruling, our Supreme Court states that restitution may be ordered in a criminal case when the defendant's crime of conviction is the proximate cause of the victim's loss. To establish proximate cause, a party must prove two elements: cause-in-fact and legal causation. Causation-in-fact requires proof that "but for" the

10

defendant's conduct, the victim's loss would not have occurred. Legal causation limits the defendant's liability further by requiring that the defendant is liable for restitution only when the victim's damages were a foreseeable result of the defendant's conduct.

Returning to our facts, the State originally charged Kraft with domestic battery, and the complaint specifically alleged that Kraft "choked and kicked Haley Fryback during an altercation." Had Kraft been convicted of domestic battery, there clearly would have been both a cause-in-fact and a legal causation between that crime and Fryback's medical bills for the emergency room visit and the lab tests and the MRI on her kidneys. Fryback testified that she visited the emergency room on May 12, 2016, because:  "I had received several wounds, hits, I was beaten very badly. My organs were shutting down, my body was essentially shutting down. I was essentially dying at that point."

Based on Fryback's testimony, it appears that the State may have undercharged Kraft and that the evidence would have supported a charge of aggravated battery rather than domestic battery. In any event, the State voluntarily dismissed the domestic battery charge as part of the plea agreement. In doing so, the State could have structured the plea agreement to require Kraft to pay restitution for specific medical bills Fryback incurred as a result of the physical beating, kicking, and choking that he inflicted on her on May 12, 2016. Had the State taken the time to protect Fryback's restitution claim as part of the plea agreement, we more than likely would not be addressing this issue on appeal.

Instead, Kraft was only convicted of criminal restraint and there was no agreement between the parties for restitution. The criminal restraint conviction was based on the allegation that Kraft prevented Fryback from leaving the residence on May 12, 2016, when he locked her keys and phone in a safe. The issue we are presented with on appeal is whether there is a causal connection between Kraft's crime of criminal restraint and the losses incurred by Fryback, sufficient to support her claim for restitution.

11

Fryback's medical bills for the emergency room, the lab tests, and the MRI on her kidneys were the direct result of Kraft's crime of domestic battery, for which he was not convicted. But that is not to say that the losses incurred by Fryback for these bills are not at least indirectly related to Kraft's criminal restraint conviction. The issue is whether the criminal restraint was the proximate cause of the medical bills. Arguably, the evidence may have established both a cause-in-fact and a legal causation between these losses and Kraft's crime of criminal restraint, depending on the factual findings of the district court.

Fryback's claim for psychological treatment resulting from the criminal restraint is more problematic. Fryback attributed her inpatient treatment at Sovereign Health of California to her dependency on Kraft and the fact that she was "still very attached, and romanticizing on him." Fryback testified that her outpatient therapy at High Plains Mental Health was the result of the long-term mental and physical abuse she had suffered during her six-month relationship with Kraft. At the restitution hearing, the prosecutor conceded: "This was not a single incident of abuse, but a long period of abuse, verbal, mental, and physical abuse." However, Kraft was convicted of one count of criminal restraint on May 12, 2016, not a pattern of such criminal conduct. In granting Fryback's entire claim for restitution, the district court made no attempt to distinguish between the medical bills for her physical injuries and the bills for her mental health treatment. Based on Fryback's own testimony, it is difficult to discern a "but for" relationship between her inpatient and outpatient counseling bills and Kraft's single act of criminal restraint.

In the end, we do not believe that we can properly assess whether the district court's restitution order should be upheld based on the record before us. The main problem we have in reviewing the district court's restitution order is that the district court declined to make any explicit factual findings to establish a causal link between Kraft's criminal restraint conviction and the various bills for which Fryback is claiming restitution. This is a necessary starting point. Without any explicit factual findings by the district court, we are unable to determine on appeal whether the district court's findings

12

are supported by substantial competent evidence in the record. And, of course, the district court did not have the advantage of evaluating Fryback's claim for restitution under the legal standard set forth by our Supreme Court in *Arnett*. Although the court in *Arnett* was able to apply the proper standard to the factual findings the district court made in that case, we cannot say the same thing here because the district court made no factual findings when granting Fryback's entire claim for restitution, other than the singular finding that her damages were "closely entwined" with the criminal restraint.

To conduct an analysis under the proper legal standard set forth in *Arnett*, the court must evaluate whether the causal link between the criminal restraint and the losses incurred by Fryback satisfies the traditional elements of proximate cause, i.e., cause-in-fact and legal causation. See *Arnett*, Slip op. at 10. In other words, the court must determine whether, but for Kraft's crime of criminal restraint, Fryback's physical and psychological injuries would not have occurred, and whether the resulting damages were a foreseeable result of Kraft's criminal actions. See *Arnett*, Slip op. at 11. These are factual findings that the district court must make in the first instance based on the evidence. On review, the appellate court can then determine whether the district court's factual findings are supported by substantial competent evidence. *Shank*, 304 Kan. at 93.

Accordingly, we vacate the district court's restitution order and remand with directions for the district court to make specific findings regarding a causal connection between Fryback's claimed medical bills and Kraft's crime of criminal restraint. In doing so, the district court should employ the proper legal standard and evaluate whether the causal link between Kraft's criminal restraint conviction and the losses incurred by Fryback satisfies the traditional elements of proximate cause, i.e., cause-in-fact and legal causation, as set forth by our Supreme Court in *Arnett*.

Kraft also claims the district court erred in pronouncing his sentence, erroneously sentencing him to a term of incarceration instead of probation. Kraft argues that, although the journal entry reflects that he was sentenced to probation, the sentence was illegal because the order for probation was not pronounced from the bench. The State concedes that this court "should remand the case for the sole purpose of allowing the district court to order Kraft [to] serve the probation he is already serving."

Whether a sentence is illegal is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). An illegal sentence can be corrected at any time. K.S.A. 2017 Supp. 22-3504(1).

Kraft's claim is somewhat of a nonissue. The parties agree that although the district court failed to expressly place Kraft on probation at the sentencing hearing, the record clearly indicates that the district court ordered Kraft to comply with the requirements of his community corrections officer. The district court does not need to use any magic words to place a defendant on probation, and here, the transcript of the sentencing hearing clearly reflects that the district court placed Kraft on probation. However, the district court never stated the term of probation, although the subsequent journal entry of sentencing specified the presumptive 12-month term of probation for Kraft's severity level 5 drug conviction. See K.S.A. 2017 Supp. 21-6608(c)(3). Because we are already remanding this case for a further hearing on the restitution issue, we also direct the district court at the same time to clarify Kraft's term of probation.

Vacated and remanded with directions.

* * *

ARNOLD-BURGER, C.J., dissenting:  I respectfully dissent from my colleagues who believe it is necessary to remand this case to the district court with directions for the district court to make specific findings regarding a causal connection between Hailey Fryback's claimed medical and psychiatric bills and Kraft's crime of conviction, criminal restraint. I do not believe such a remand is necessary because the causal connection was adequately addressed by the district court and is, in my opinion, clear.

The facts have been well stated by the majority and I will not rehash them here. But I would like to highlight a few. First, Fryback was the victim of a brutal attack in her home. As to this, there can be no dispute. Second, it is undisputed that she was prevented, by Kraft, from leaving the home during and after the attack. She was also prevented from calling for help, because he took her cell phone. The affidavit of probable cause indicated that several hours had gone by before she was taken to the hospital. Her injuries were extensive.

Third, not only did she have medical bills related to the physical injuries she received but, upon the recommendation of the police, she sought psychiatric treatment as well. Kraft had exercised both physical and psychological control over her that day. After the attack, she "was extremely mentally unable to do most things myself." The psychiatrist ordered laboratory tests related to her kidney function, at least in part because of the injury that had been inflicted on her kidneys during the beating. Her psychiatrist then recommended that she needed to undergo inpatient treatment to provide more intensive psychiatric care. She was still undergoing outpatient mental health treatment at the time of the restitution hearing—approximately a year after Kraft restrained her and beat her. She indicated in her victim impact statement that she still suffers from post-traumatic stress disorder and night terrors. She alleges that it took her months to be able to speak due to damage done to her vocal chords. It is unclear whether this was a physical

15

injury from the beating itself or a collateral injury related to screaming for help as she was being restrained. I would pause to note that Kraft felt it was important both at the hearing and in his brief to this court to note that Fryback had suffered from episodes of depression since she was 16 years old. This appears to be offered in an attempt to minimize the trauma she suffered during her restraint and beating at the hands of Kraft. I would hate to think that just because someone has sought mental health counseling and treatment in the past, they would be barred from claiming treatment was necessary related to a particularly traumatic event. Prior treatment does not diminish what she was subjected to by Kraft. Likewise, it should not be used as a measure of what she is entitled to in the form of restitution.

Finally, on appeal, Kraft does not challenge the amount of restitution ordered, which included payments for treatment related to her physical injuries and her psychiatric treatment. He only challenges the causal connection between the restitution ordered and the crime of conviction, criminal restraint.

As the majority aptly points out, our Supreme Court has recently discussed the issue of what constitutes sufficient causation to support a claim for restitution in *State v. Arnett*, 307 Kan. ___, ___ P.3d ___, No. 112,572, filed March 23, 2018. To establish a connection between the victim's loss and the defendant's crime, the State must first prove that it is more likely than not that, but for the defendant's conduct, the result would not have occurred (causation-in-fact). And second, the State must establish that it was foreseeable that the defendant's conduct might have created a risk of the harm and the result of that conduct and any contributing causes were foreseeable (legal causation). *Arnett*, 307 Kan. ___, Syl. ¶ 5. Just as the Supreme Court did in *Arnett*, I believe it is unnecessary to remand the case to the district court for reconsideration, because it is clear from the record we have that the district court used the proper standard.

16

The district court judge correctly and specifically found that the criminal restraint and the domestic battery were so closely entwined that he could not separate them in terms of restitution. To bolster his conclusion, he noted the difficulty that the psychiatrist had in separating the two. I have no trouble concluding that the judge's decision was supported by substantial competent evidence. Clearly, in order to beat Fryback, and prevent her from escaping his rage, he had to restrain her. He did this by the psychological control he had exerted over Fryback during their relationship, as well as by taking her car keys so she could not leave. He further prevented her from calling for help or a ride by taking her phone. Also due to her restraint, there was a delay in getting her to the hospital of at least two hours. Because it is more likely than not that had Kraft not restrained her, Fryback would have fled the scene or called for help and avoided injury, there is sufficient evidence to establish causation in fact. Second, it was foreseeable that Kraft's conduct of restraining Kraft so that he could beat her, created a risk of harm and the result of that conduct—serious physical and psychological injury to Fryback—were foreseeable. It is clear to me that there is substantial competent evidence to support a finding of legal causation. As the district court judge indicated, it is simply impossible to separate the criminal restraint from the battery. The restraint was necessary to effectuate the battery. Accordingly, I would affirm the district court without the necessity of a remand.