NOT DESIGNATED FOR PUBLICATION

Nos. 120,114
120,115
120,116
120,117

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY JORDAN SMITH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed December 13, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., BRUNS, J., and BURGESS, S.J.

PER CURIAM: In this consolidated appeal involving four criminal cases, Timothy Jordan Smith challenges the restitution order entered by the district court. On appeal, Smith contends that the district court abused its discretion by imposing a restitution plan that is "unworkable" under K.S.A. 2018 Supp. 21-6604(b)(1). Because of the significant discrepancy between the journal entries of judgment in the four cases and the ruling made by the district court from the bench, it is impossible for this court to determine what plan

1

the district court actually approved or to determine if such plan is workable. Although we affirm the restitution judgments in favor of the individual defendants as reflected in the journal entries, we vacate the restitution judgment in favor of State Farm Insurance as well as the restitution plan and remand these issues to the district court.

FACTS

On March 1, 2018, Smith pleaded guilty to five counts of burglary, five counts of theft, one count of identity theft, and one count of interference with a law enforcement officer, in four criminal cases—Case Nos. 17-CR-3253; 17-CR-3643; 17-CR-3646; and 17-CR-3649. The four cases were consolidated for the purposes of sentencing. At the sentencing hearing, the district court sentenced Smith to 91 months in prison suspended to 24 months' probation. Then, the district court turned to the issue of restitution in the four cases.

Smith's attorney represented that his client did not challenge the amount of restitution to be repaid to any of the individual victims in the four cases—which totaled $16,850.41. He also advised the district court that he believed he could make monthly payments of between $50 and $100 to the victims. However, Smith did object to a restitution claim of $17,233.19 by "State Farm Auto" or "State Farm Insurance Company"—which was evidently a subrogation claim to offset money paid by the insurance company as a result of Smith's criminal actions—raising the grand total of restitution claimed to $34,083.60. The legal name of the insurance company making the restitution claim is also unclear from the record. Likewise, although the State represented that the insurance company was asserting a restitution claim in Case No. 17-CR-3253, the record is unclear regarding the accuracy of this representation.

Prior to receiving evidence on the issue of workability, the district court ordered "restitution to each of the victims in the amounts as recited by the prosecutor." Although

the district court did not specify the amounts to be awarded to the various victims, we assume—as do the parties in their briefs—that the restitution award included the amount claimed by State Farm. However, we note that there is no restitution judgment in favor of State Farm mentioned in the journal entries entered by the district court following the hearing.

The district court further ordered that Smith was to make "minimum monthly payments towards restitution . . . starting 30 days after [his] release from custody." At that point, Smith's counsel reminded the district court that his client had requested to present evidence and argument in an attempt to show unworkability of the restitution plan. After a recess, the district court reconvened the hearing and Smith was called to the witness stand.

Regarding his financial situation, Smith testified that he was 19 years old, healthy, and spoke English. Although he can read, he was evidently diagnosed with dyslexia, did not finish high school, and does not have a GED. Smith suggested that he may be able to obtain a job at McDonald's making between $7.25 and $9 an hour. However, he has no formal work history. Smith estimated gross earning potential of around $1,400 a month. He also asserted that he had no savings.

Turning to his expenses, Smith testified that he paid $200 to $250 in monthly rent to his mother. In addition, he testified that he paid between $300 to $400 a month for food and clothes and $35 per month for a cellphone. Smith also testified that he had a car but that he planned on walking to work. If he found a job farther away from his mother's house, he estimated that he may have to pay an additional $30 a month for gas. Smith further testified that he voluntarily paid $100 to $150 each month to the mother of a child he fathered.

After hearing Smith's testimony, the district court found that Smith had failed to meet his burden that restitution is unworkable. Finding that he should be able to get a job, the district court ordered him to make minimum payments of $50 a month after he is released from incarceration. Specifically, the district court found:

"There's no reason to believe that this young 19 year old, strapping young man is going to be working a minimum wage McDonald's job for the next 30 years. I mean, you just go and show up and they're going to move you up into management and lickity split.

"You know, . . . I've got friends that own Little Caesar's and Dairy Queens and all they want is somebody that will just show up and just do basic things and they love those people and they start promoting them and they start giving them pay raises. So there's no reason, in this economy, if you just show up and do a half-way decent job, you're going to just very quickly move up the chain."

The district court also ordered that Smith would be jointly and severally liable for the restitution judgments along with his codefendants in each case. In addition, the district court agreed with Smith's request that any payments received are to be first applied toward the restitution judgments before other costs or fees. Regarding the relationship between Smith's restitution payments and the eventual termination of probation, the district court noted that "it's not unusual that we close out a probation and just at that point the restitution is still an outstanding obligation and remains there and it's enforceable and there's collection attempts made." However, it is unclear whether the court intended to tie the restitution judgments to Smith's ongoing probation. Regardless, it appears that Smith's probation was subsequently revoked.

Several months after the sentencing hearing, the district court entered separate journal entries of judgment in each of the four criminal cases. The journal entry in Case No. 17-CR-3253 reflects a restitution judgment in favor of victim N.E.T. in the amount of $4,572.38; the journal entry in Case No. 17-CR-3653 reflects a restitution judgment in

4

favor of victim R.D.P. in the amount of $5,010.68; the journal entry in Case No. 17-CR-3646 reflects a restitution judgment in favor of R.M.P. in the amount of $6,055.00; and the journal entry in Case No. 17-CR-3649 reflects a restitution judgment in favor of victim S.A.S. in the amount of $1,212.35. Interestingly, we find no reference to State Farm or its purported restitution claim in any of the journal entries. Rather, the journal entries reflect combined restitution judgments in the amount of $16,850.41, rather than the $34,083.60 discussed by the parties in their briefs.

ANALYSIS

On appeal, Smith contends that the district court abused its discretion by imposing a restitution order that is "unworkable" under K.S.A. 2018 Supp. 21-6604(b)(1). We review whether a plan of restitution would be unworkable for an abuse of discretion. Judicial discretion is abused only when no reasonable person would agree with the decision of the district court or if the decision is based on an error of law or of fact. However, to the extent that this question requires us to interpret the restitution statute, our review is unlimited. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018).

K.S.A. 2018 Supp. 21-6604(b)(1) provides that a district court "shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." The Kansas Supreme Court has held "'restitution is the rule and a finding that restitution is unworkable the exception'" under the statute. *Meeks*, 307 Kan. at 816-17, quoting *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). Moreover, the burden is on the defendant to present evidence of "'compelling circumstances'" to prove a restitution plan is unworkable. *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015).

5

In *Goeller*, our Supreme Court upheld a restitution order of $1,000 per month for 12 months where the defendant had failed to present evidence of his inability to pay and where the payments would be delayed until after a defendant's release from prison. 276 Kan. at 583-84. Likewise, in *Alcala*, 301 Kan. at 840, the defendant's prison sentence and reduced earning potential while incarcerated was found not to render restitution unworkable where the defendant failed to present evidence that he would be unable to make payments upon his release. The following year, in *State v. Shank*, 304 Kan. 89, 94-95, 369 P.3d 322 (2016), it was held that the defendant had not shown a restitution order to be unworkable when he failed to object to the proposed restitution at the sentencing hearing. In *State v. Holt*, 305 Kan. 839, 844-45, 390 P.3d 1 (2017), our Supreme Court affirmed a restitution order in which the defendant was required to pay $12,406.58 because the restitution was not collectable until the defendant's release from custody and he had not come forward with evidence demonstrating his inability to pay after his release.

We recognize that in *State v. Herron*, 50 Kan. App. 2d 1058, 1065, 335 P.3d 1211 (2014), a panel of this court concluded that "the entry of high restitution orders that can't be paid in any reasonable time frame would make the workability requirement . . . meaningless." In particular, the panel in *Herron* found that it was unreasonable to "keep someone under court supervision to make restitution payments for 57 years." 50 Kan. App. 2d at 1065. Other panels of this court have concluded that monthly payments that exceed half of a defendant's monthly income are generally unworkable. *State v. Orcutt*, No. 101,395, 2010 WL 348281, at *5-6 (Kan. App. 2010) (unpublished opinion). See *Meek*, 307 Kan. at 817-19.

At the same time, we also note the concern expressed by the Kansas Supreme Court about the "rigid definition of 'unworkable' that may be taking shape" in several opinions issued by panels of this court in recent years. *Meeks*, 307 Kan. at 819 ("The restitution statute does not include a definition of 'unworkable,' let alone a detailed one.

From this omission, we must assume that the legislature did not intend a rigid or unyielding definition."). In *Meeks*, an order was upheld in a case in which the defendant was ordered to pay $14,356.21 in restitution after his release from prison. In reaching this conclusion, our Supreme Court reiterated "that unworkability should be evaluated on a case-by-case basis," finding:

> "District courts should use this flexible guideline to evaluate each defendant's unique circumstances before deciding whether the defendant has shown a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty. See *State v. Hunziker*, 274 Kan. 655, Syl. ¶ 4, 56 P.3d 202 (2002)." 307 Kan. at 820.

Turning to this case, we note a significant problem that makes our review of the restitution judgments and the restitution plan entered by the district court to be extremely difficult if not impossible. As noted above, it appears from a review of the transcript of the sentencing hearing that the district court intended to award restitution to State Farm— perhaps in Case No. 17-CR-3253—in the amount of $17,233.19. However, when the journal entries were entered in the four cases several months after the hearing, no mention was made of State Farm or its restitution claim.

Before we discuss this issue, we pause to note that it does not appear that the parties have recognized the discrepancy between the transcript and the journal entries. At the very least, they do not discuss it in their briefs. Nevertheless, where an appellate court is precluded from exercising meaningful appellate review, it is appropriate to remand the matter to the district court for further proceedings. See *State v. Sanders*, 310 Kan. 279, 290, 445 P.3d 1144 (2019); *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014).

7

K.S.A. 2018 Supp. 22-3424(d)(1) provides that if a district court orders restitution, "the order shall be enforced as a judgment of restitution pursuant to K.S.A. 60-4301 through 60-4304, and amendments thereto." In turn, K.S.A. 60-4301 provides that in order to be enforceable, "[a] certified copy of any judgment of restitution, established pursuant to subsection (d) of K.S.A. 22-3424, and amendments thereto, shall be filed in the office of the clerk of the district court of the county where such restitution was ordered." Furthermore, under K.S.A. 60-4304(b), "[a] judgment of restitution will not bar any subsequent civil remedy or recovery, but the amount of any restitution paid shall be set off against any subsequent civil recovery."

Although the pronouncements made by the district court from the bench at sentencing usually control the future course of action in a criminal action, the transcript of the sentencing hearing is difficult to follow regarding restitution. This difficulty is multiplied by the apparent inconsistency between the transcript and the journal entries with regard to State Farm's restitution claim. From a review of the record, whether this was simply a mistake in journalizing the district court's order or whether the parties may have reached a subsequent agreement not to pursue State Farm's restitution claim in the criminal case.

In light of Smith's statements during the sentencing hearing that he did not contest any of the restitution to the individually named victims, we agree that it was reasonable for the district court to enter restitution judgments in their favor in the amounts set forth in the four journal entries. However, under the current state of the record, we are unable to make a determination regarding whether the proposed restitution plan is unworkable as alleged by Smith. We are similarly unable to determine—in light of the inconsistency between the transcript and the journal entries—what the district court actually intended to do regarding State Farm's restitution claim. In fact, the specific State Farm entity to which the restitution is allegedly owed is unclear from the record.

8

We find that these issues should be remanded to the district court for further proceedings consistent with the Kansas Supreme Court's decision in *Meeks*. As our Supreme Court has reminded us in *Meeks*, the unique financial circumstances of the particular defendant in any given case must be considered before deciding whether he or she has shown a restitution plan to be unworkable. In particular, factors such as the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents should be considered. Likewise, the amount of time it will take a defendant to pay off restitution judgments should be considered. In particular, this factor is relevant "especially if the defendant is subject to probation until the restitution is paid in full." *Meeks*, 307 Kan. at 820.

In some instances, it may be best to simply enter judgments on behalf of victims that are not tied to a defendant's probation or parole but are left to the enforcement provisions found in K.S.A. 2018 Supp. 22-3424(d)(1) and K.S.A. 60-4301 et seq. In other instances, it may be best to order monthly payments or some other specific repayment plan depending on the amount of restitution and a defendant's financial circumstances. Regardless, the most important consideration is for the district court—as well as appellate courts—to "'keep in mind the ultimate goals of restitution:  compensation to the victim and deterrence and rehabilitation of the guilty.'" *State v. Martin*, 308 Kan. 1343, 1353, 429 P.3d 896 (2018).

In conclusion, we affirm the restitution judgments in favor of the individual defendants as reflected in the journal entries. However, we vacate the restitution judgment in favor of State Farm as well as the restitution plan calling for Smith to make $50 a month payments. Finally, we remand the issues relating to State Farm's restitution claim as well as those relating to the amount and duration of the restitution plan to the district court for further proceedings consistent with the cases cited in this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings.