IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,593

STATE OF KANSAS,
*Appellee*,

v.

PATRICK A. MEEKS,
*Appellant*.

SYLLABUS BY THE COURT

1.

An appellate court reviews whether a plan of restitution would be unworkable for an abuse of discretion.

2.

When a defendant challenges an order of restitution as unworkable, it is the defendant's burden to come forward with evidence of his or her inability to pay.

Review of the judgment of the Court of Appeals in an unpublished opinion filed December 18, 2015. Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed April 13, 2018. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jodi E. Litfin*, assistant solicitor general, argued the cause, and *Lauren Amrein*, legal intern, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt,* attorney general, were with her on the briefs for appellee.

The opinion of the court was delivered by

ROSEN, J.: Patrick Meeks seeks review of the Court of Appeals decision affirming his order of restitution. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Patrick Meeks pleaded guilty to one count of felony theft over $1,000 but less than $24,999 for the theft of a vehicle belonging to Monica and Christopher Taylor. Meeks borrowed the vehicle with permission but never returned it. He asserted that the vehicle was stolen from him and never recovered.

At the time the vehicle was stolen, its fair market value was $13,856.21, but there was a lien on the vehicle through Topeka City Employees Credit Union that totaled over $22,000. The Taylors had a vehicle insurance policy and a guaranteed asset protection (GAP) policy on the vehicle. As a result of the theft, they made a claim with their insurance carrier. After the Taylors paid a $500 deductible, the vehicle insurance policy paid off the value of the vehicle and the GAP insurance covered the remainder of the loan, which was $8,870.38. These payments went directly to the Topeka City Employees Credit Union.

The State initially sought restitution in the amount of $22,726.59. Before the sentencing hearing, Meeks submitted a motion opposing the State's request, arguing that the amount was too high because it exceeded the amount of money he could earn in a year.

2

At the sentencing hearing, the State requested that the district court order $23,226.59 in restitution—$500 to the Taylors for the deductible; $13,856.21 to USAA Casualty Insurance for covering the value of the vehicle; and $8,870.38 to Frost Financial Services for the GAP insurance payment.

During the defense's closing argument, the following exchange took place:

"[Defense attorney]: Your Honor, I've done some Kelley Blue Book research.

"THE COURT:  and you don't have that evidence before me.

"[Defense attorney]:  Right, right, right. But my point is, with that that I've done, that would support the insurance payment of $13,856.

"THE COURT:  So you're not contesting the—at least the value of the loss, fair market value, being $13,856.20?

"[Defense attorney]:  Correct. We would—that has always been our argument, is that the fair market value, the amount of the lost car itself, should be the restitution amount.

"THE COURT:  The GAP insurance, is what you're disputing?

"[Defense attorney]:  Correct, Your Honor.

"THE COURT:  And then you're making a claim or asking the Court to consider ability to pay as the other factor?

"[Defense attorney]:  Right, right. And I could cite additional cases, if you want me to go do more research on this."

During the hearing, Meeks submitted the financial affidavit that accompanied his application for a public defender and testified to the following information: He had a GED and some college; he had been unemployed for the previous 5 years because he had been in prison; he had cumulatively served 16 years in prison throughout the course of his life; when he was not in prison he had worked assembly line jobs, construction jobs, production jobs, and manufacturing jobs; and he had never made over $15 per hour or earned more than $14,000 in a year. Meeks also testified that he had the following debts and financial obligations: $22,000 or $23,000 in student loans, $5,000 to $7,000 in hospital bills, and $14,000 in child support arrearages; he was ordered to pay $168 per month in child support, and that amount was set low because of his financial status; and he had a third child to care for. Meeks testified that he had filed a disability claim because of a herniated disk in his back and his lawyer was a public defender because he was indigent. Finally, Meeks testified that he thought he was capable of doing some jobs, like sitting and answering phones, despite his bad back. When the prosecutor questioned whether Meeks was able to pay any amount of restitution, he answered "no."

Before the district judge ruled, he asked Meeks what he thought he could pay in restitution. Meeks said, "I believe I could go to work and make payments on anything forever, at a certain adjusted amount." The judge then asked Meeks what he thought the court should order him to pay, and Meeks replied, "Well, I believe the fair market value of the car, the $13,000, I mean. I mean, not all at one time, I won't. I won't even be able to pay one dime. I have nothing but the clothes that are sitting in property at the Shawnee County jail." Meeks told the judge that he had the ability to work, that he had a job waiting for him at a Kawasaki manufacturing plant where he would make $11.50 per hour, and that he would be living with his child's mother, who also worked, so there would be "income going into the home."

4

The district court sentenced Meeks to 11 months in prison and 12 months of postrelease supervision. He ordered Meeks to pay $14,356.21 in restitution—$500 for the Taylors' deductible and $13,856.21 for the fair market value of the vehicle. The court found that Meeks was able to work and had a desire to do so, and that Meeks would be able to pay towards the restitution amount after he was released from prison. The judge ordered Meeks to start paying the restitution upon his release and said that Meeks could establish a monthly plan at that time. The judge also ruled that it would be reasonable for Meeks to pay up to $300 per month during the postrelease supervision, and at the end of the supervision, Meeks could make payments towards the restitution until it was fully paid.

Meeks appealed the restitution order to the Court of Appeals, arguing that the district court erred because the amount of the order made any plan unworkable. The Court of Appeals affirmed the district court. *State v. Meeks,* No. 113,593, 2015 WL 9302722 (Kan. App. 2015) (unpublished opinion). We granted Meeks' petition for review.

ANALYSIS

The district court ordered Meeks to pay $14,356.21 in restitution upon his release from prison pursuant to K.S.A. 2017 Supp. 21-6604(b)(1).

Meeks contends that the district court erred because, as a result of his limited financial resources, he will never be able to pay off the order in a reasonable time frame, and no reasonable person would agree that such a plan is a workable one.

We review whether a plan of restitution would be unworkable for an abuse of discretion. *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017) (citing *State v. Shank*, 304

5

Kan. 89, 93, 369 P.3d 322 [2016]). Judicial discretion is abused if no reasonable person would agree with the decision or if the decision is based on an error of law or fact. *Shank*, 304 Kan. at 92. To the extent this question requires interpretation of the restitution statute, our review is de novo. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

K.S.A. 2017 Supp. 21-6604 enumerates the authorized dispositions for crimes committed on or after July 1, 1993. Regarding restitution, the statute provides that "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." K.S.A. 2017 Supp. 21-6604(b)(1).

In *State v. Goeller*, we explained that "[t]he design of this provision makes clear that restitution is the rule and a finding that restitution is unworkable the exception. It also leads us to conclude that it is defendant's burden to come forward with evidence of his or her inability to pay." 276 Kan. 578, 583, 77 P.3d 1272 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015).

In *Shank*, we held that a defendant had not shown that restitution was unworkable when he failed to object to the proposed restitution at the sentencing hearing. 304 Kan. at 94.

In *Holt*, we affirmed a restitution order of $12,406.58 because, while the defendant might have shown that he could not pay the restitution while he was in prison, the restitution was not due until his release, and he had not provided any evidence demonstrating his inability to pay in the future. 305 Kan. at 844-45. Similarly, in *State v. Alcala*, a defendant's "lengthy prison sentence and limited earning potential while

6

incarcerated" did not render restitution unworkable because the defendant failed to present any evidence of his inability to pay after his possible parole. 301 Kan. 832, 840, 348 P.3d 570 (2015).

In *Goeller*, we upheld a restitution order of $1,000 per month for 12 months when the defendant had not presented evidence of his inability to pay. 276 Kan. at 580. At the sentencing hearing, the defendant testified that he had previously worked for a drilling company but had been unemployed for 1 year and had no assets or income. His counsel stated that the defendant had been employed by an energy company that was down but expected to be up shortly. 276 Kan. at 579. We concluded that these statements were adequate to uphold the order. Adding to the reasonableness of the order, we noted, was the fact that the restitution ordered was far less than the victim's damages and the payments would be delayed until the defendant's release from prison. 276 Kan. at 583.

The Court of Appeals has considered the merits of an unworkability argument many times. With those decisions, it has effectively set more distinct guidelines regarding when a restitution order is unworkable.

In *State v. Orcutt*, No. 101,395, 2010 WL 348281 (Kan. App.) (unpublished opinion), *rev. denied* 290 Kan. 1101 (2010), the district court ordered the defendant to pay $7,500 in restitution at a rate of $625 per month. A panel of the Court of Appeals held that the restitution was unworkable because the defendant's only income was $980 in social security benefits, he had no ability to earn more, and he had no money left after paying for rent, utilities, groceries, and medication. *Orcutt*, 2010 WL 348281, at *5-6.

The Court of Appeals also found restitution unworkable in *State v. Herron*, 50 Kan. App. 2d 1058, 335 P.3d 1211 (2014). There, the district court ordered a defendant who made $680 per month to pay $6,864 in restitution after concluding that

poverty alone was not enough to make a restitution plan unworkable. 50 Kan. App. 2d at 1060-61. A majority of the Court of Appeals panel reversed, holding that poverty could render a restitution plan unworkable. 50 Kan. App. 2d at 1062. The majority further held that the district court abused its discretion in failing to find the restitution order unworkable, because no reasonable person would agree that requiring the defendant to pay the entire restitution in 18 months or extending her probation by 55 years so she could make small, $10 monthly payments was a workable plan. 50 Kan. App. 2d at 1064-65.

In *State v. Hambright*, 53 Kan. App. 2d 355, 388 P.3d 613 (2017), a panel of the Court of Appeals followed the reasoning of *Herron*. In *Hambright*, the defendant agreed to pay back $60,000 in restitution as part of a plea agreement and the district judge ordered him to pay it back at a rate of $500 per month. The defendant appealed the restitution plan as unworkable because he only made $200 per week and paid $250 per month in rent. The panel agreed that it was unworkable because the plan required the defendant to pay over half of his monthly income toward restitution and left him little money for necessities. 53 Kan. App. 2d at 366.

In *State v. Martin*, a different panel of the court wrote, "Restitution plans which require defendants to make monthly payments which exceed half of their monthly income are generally unworkable." No. 115,651, 2017 WL 2713042, at *4 (Kan. App. 2017) (unpublished opinion) (citing *Herron*, 50 Kan. App. 2d 1058).

Another Court of Appeals panel upheld a restitution order in *State v. Steffens*, No. 113,175, 2016 WL 1719666 (Kan. App. 2016) (unpublished opinion). There, the district court ordered the defendant to begin paying restitution upon his release from prison, when his postrelease supervision began. Even though the defendant was disabled, homeless, and had been unemployed for many years, the panel affirmed the order

8

because it concluded the district court had "clearly considered [the defendant's] circumstances by reducing the amount he would have to pay from over $62,000 to $2,400, less than 4% of the total," and the "amount does not appear unreasonable, particularly in light of the fact that—as a postrelease supervision case—the amount could be further reduced upon [the defendant's release] if his situation does not improve." 2016 WL 1719666, at *5.

With these holdings, the Court of Appeals has defined an "unworkable" restitution plan as one that is imposed when the defendant would not have the ability to pay towards restitution after covering basic necessities, when over half of the defendant's income would go to restitution and leave little for covering those necessities, or when the defendant would not pay back the restitution in a "reasonable time frame." However, if restitution is ordered as a condition of postrelease supervision, as opposed to probation, plans that would fall into one of these categories may still be considered workable, since they are subject to change by the prisoner review board after the defendant's release from incarceration.

We are wary of the rigid definition of "unworkable" that may be taking shape as a result of the numerous Court of Appeals decisions. Indeed, in this case, the Court of Appeals panel seemed to consider Meeks' plan to be a workable one, at least in part, because it was not like other plans that courts had considered unworkable, instead of evaluating the plan on its own merits. The panel wrote "the restitution imposed on Meeks may be substantial and may reflect a significant economic burden, but it does not approach the burden the district court visited on Herron." *Meeks*, 2015 WL 9302722, at *2.

The restitution statute does not include a definition of "unworkable," let alone a detailed one. From this omission, we must assume that the legislature did not intend a

9

rigid or unyielding definition. There is no legislative history suggesting otherwise. Had the legislature envisioned a scenario in which courts only waived restitution when it would demand more than a certain percentage of a defendant's income or time out of a defendant's life, it could have written that into the statute. Because it did not, we must be confident that our decisions do not force such a result. See *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016) (fundamental rule of statutory interpretation is the intent of legislature governs).

Given the rigidity evolving from the Court of Appeals decisions, we think it is appropriate to reiterate that unworkability should be evaluated on a case-by-case basis. As we stated in *Goeller*, a defendant who argues that restitution is unworkable must come forward with evidence of his or her inability to pay. 276 Kan. at 583. District courts should use this flexible guideline to evaluate each defendant's unique circumstances before deciding whether the defendant has shown a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty. See *State v. Hunziker*, 274 Kan. 655, Syl. ¶ 4, 56 P.3d 202 (2002).

This method of figuring restitution is consistent with those that are utilized across the country. The Model Sentencing and Corrections Act includes a model restitution statute that directs a court to consider "the financial resources and future ability of the offender to pay or perform" when ordering restitution. Model Sentencing and Corrections Act § 3-601, 10 U.L.A. 443 (2001). In a majority of states, courts follow such a model,

considering a defendant's circumstances and his or her ability to pay before setting a restitution amount. See Ala. Code § 15-18-68(a); Conn. Gen. Stat. § 53a-28(c); *Pratt v. State*, 486 A.2d 1154, 1161 (Del. 1983); D.C. Code § 16-711(b); Ga. Code Ann. § 17-14-10(a); Idaho Code § 19-5304(7); Ind. Code § 35-38-2-2.3(a)(6) (when ordered as a condition of probation); Me. Rev. Stat. tit. 17-A, § 1325(1)(C), (2)(D); Md. Code Ann., Crim. Proc. § 11-605(a)(1); *Com. v. Henry,* 475 Mass. 117, 121, 55 N.E.3d 943 (2016); Minn. Stat. Ann. § 611A.045(a)(2); Miss. Code. Ann. § 99-37-3(2); Neb. Rev. Stat. Ann. § 29-2281; N.J. Stat. Ann. § 2C:44-2(b)(2), (c); N.M. Stat. Ann. § 31-17-1(A); N.C. Gen. Stat. § 15A-1340.36(a); N.D. Cent. Code. § 12.1-32-08(1)(b); Ohio Rev. Code Ann. § 2929.19(B)(5); 42 Pa. Stat. § 9754(c)(8) (when ordered as a condition of probation); S.C. Code Ann. § 17-25-322(B); S.D. Codified Laws § 23A-28-1; Tenn. Code Ann. § 40-35-304(d); Utah Code Ann. § 77-38a-302(5)(c); W. Va. Code § 61-11A-5(a); Wis. Stat. § 973.20(13)(a); Wyo. Stat. Ann. § 7-9-103(c). Some state statutes explicitly direct courts to consider factors similar to the factors we describe as relevant to the defendant's ability to pay. See, e.g., D.C. Code § 16-711(b) (directing courts to consider defendant's resources, ability to earn money, and obligations to dependents when setting restitution); Me. Rev. Stat. tit. 17-A, § 1325 (directing courts to consider "all relevant factors" when restitution creates a "financial hardship on the offender or dependent of the offender," including number of dependents, living expenses, special needs, income and future earning capacity, and other resources).

In this case, Meeks testified that he had no income and multiple financial obligations, including debts and dependents. He testified that he had been in prison for 16 years of his life and had limited ability to work due to a back injury. However, Meeks also testified that he had the ability to work and he told the district court that he had a job waiting for him and would be able to make restitution payments "forever." When the district judge asked Meeks what he thought he should pay in restitution, Meeks replied that he thought he should be responsible for an amount equaling the fair market value of

11

the vehicle. After considering the evidence and Meeks' statements, the district court ordered $14,356.21 in restitution—$8,870.38 less than the State requested.

The Court of Appeals concluded that the restitution amount was not an abuse of discretion. While we question the panel's analysis insofar as it merely compared the order here to orders in cases where it considered an order unworkable, we agree with its conclusion. Meeks showed his immediate financial incapacity but did not provide evidence to show that he would be unable to pay restitution after his release from prison. In fact, Meeks testified to the contrary when he said that he was able to work despite his back injuries. Based on these facts, we cannot conclude that no reasonable person would have taken the view adopted by the district court.

We conclude that the district court did not abuse its discretion when it ruled that Meeks failed to show a restitution plan was unworkable. Accordingly, the Court of Appeals did not err when it concluded the same.

The judgment of the district court is affirmed. The decision of the Court of Appeals is affirmed.

JOHNSON, J., concurs in the result.