NOT DESIGNATED FOR PUBLICATION

No. 118,493

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NATHANIEL RAY DIPMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pratt District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed May 10, 2019. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Tracey T. Beverlin*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., GREEN and POWELL, JJ.

PER CURIAM: Nathaniel R. Dipman pleaded guilty to one count of nonresidential burglary and one count of felony theft. The district court ordered Dipman to pay $7,725 in restitution to Isaias Uribe. Dipman appeals, challenging the restitution order. For the reasons stated below, we affirm.

In November 2016 in case No. 16 CR 268, the State charged Dipman with nonresidential burglary, nine counts of felony theft, and criminal damage to property. The

1

charges arose from the burglary of Betty Hughes' garage, where her son, Uribe, stored property.

On February 9, 2017, the case proceeded to a preliminary hearing. Uribe testified that he found Hughes' garage door kicked in around 10:30 or 11 p.m. on November 12, 2016. He testified that the guns and ammo that he stored in Hughes' garage were missing. He testified that in the interim between the burglary and the preliminary hearing, some but not all of his guns were recovered. He identified the guns he reported as stolen that the police had recovered, and detailed the guns, ammo, and accessories that he reported as stolen but that had not been recovered.

Crystal Eubank also testified at the preliminary hearing. She testified that she was with Dipman on the night of the burglary. She testified that she went with Dipman and another man, Tyler Gerritzen, to the garage and sat in her car as Dipman and Gerritzen broke into the garage. She testified that the men brought two "armloads" each of "ammo containers, big metal boxes, and cases with guns" out of the garage and put them in the trunk of her car.

She testified that after loading up her trunk, the group drove to an outbuilding on Dipman's uncle's land. Eubank said that the men then unloaded the stolen goods from her trunk and put them in the outbuilding. According to Eubank, the building was very messy, but they used it to store stolen property and hang out. She also testified that the outbuilding was not kept locked.

Eubank also testified that a few hours after dropping off the property at the outbuilding, she, Dipman, and two friends returned because Dipman wanted to show the friends the stolen property. She said that they brought some of the guns from the outbuilding back to the car after this visit. She said that after the group left the outbuilding, they went to get breakfast. After breakfast, the group went out driving;

2

Dipman drove the car, then hit a mailbox and fled the scene in the car. Someone noticed them fleeing the scene and pursued them, but the group's car broke down. When the car broke down, Dipman told the two friends to flee on foot and take some of the guns with them; they did so.

Several police officers also testified at the preliminary hearing. At the end of the preliminary hearing, the district court bound Dipman over on the felony charges.

On May 16, 2017, the State amended the charges in 16 CR 268 to include an additional count of felony theft. That same day, Dipman entered into a plea agreement resolving 16 CR 268, as well as three additional cases pending against him. He pleaded guilty to one count of nonresidential burglary and one count of felony theft in 16 CR 268; in exchange, the State dismissed the remaining charges in 16 CR 268. In the other cases, Dipman pleaded guilty to criminal possession of a firearm, possession of amphetamine, aggravated burglary, and aggravated escape from custody.

On August 7, 2017, the district court held a restitution and sentencing hearing. Uribe again testified about the property he believed Dipman stole. He testified that he had met with the sheriff's office since the preliminary hearing to discuss property that the sheriff's office had recovered, as well as property that Uribe reported missing but was not recovered. He testified that the following remained unrecovered, or was recovered but in a damaged state:

- 3,000 rounds of 30-30 ammo valued at $1,875.
- 3,000 rounds of 30-06 ammo, valued at $2,250.
- 3,000 rounds of 7.62 by .223 ammo, valued at $1,500.
- A .40 Ruger, valued at $400.
- A Kel-Tec .380, valued at $300.
- A different .380 pistol, valued at $300.

3

- A 20-gauge shotgun, valued at $200.
- A 9 millimeter Hi Point, valued at $200.
- A .410 Snake Charmer, valued at $500.

The total value of these items was $7,525. He also testified that the burglary cost him additional money beyond just the purchase price of each item, as he would have to pay $45 to reregister each gun, and pay shipping fees as well.

Dipman also testified at the restitution hearing. He testified that he did not take some of the guns and ammo for which Uribe sought restitution. Dipman's attorney argued that law enforcement was "halfhearted in their inventory" of the recovered property, and that Uribe had not been able to actually see the property that was recovered but instead, relied on reports from law enforcement.

In 16 CR 268, the district court sentenced Dipman to 27 months in prison for the burglary and 6 months in prison for the theft, with the sentences to run concurrently.The district court continued the hearing on restitution so that "the county attorney and defense counsel [could] confirm with the sheriff that the items that have been listed have not been recovered."

During the second restitution hearing, the State told the district court that all of the items Uribe described at the prior hearing were in fact still missing, as was one additional gun, "a bolt action valued at $200." Dipman again argued that he did not take all of the property for which Uribe sought restitution, and that everything he took had already been returned to Uribe. Dipman then objected, stating that the court had failed to make any findings as to the workability of restitution. Dipman's attorney stated, "It's frankly my hope that after six years of prison, anything I can and should do to make it so he doesn't have creditors coming after him, I certainly owe that to him."

The district court found that Uribe's testimony about the missing items was more credible than Dipman's testimony. Specifically, the district court noted that Dipman was under the influence of drugs when the burglary occurred, that other individuals were also involved in the burglary, and that the place where Dipman stored the stolen property was not secure. As to "reasonableness and [Dipman's] ability to pay," the district court noted that Dipman would be in prison "for an extensive period of time" during which he would be unable to pay. Nevertheless, the district court stated that Dipman's sentence included 24 months of postrelease supervision, "and the possibility of payment of restitution while he is on post-release is not to be ignored nor discounted, and I believe that it is reasonable to order that restitution . . . [despite Dipman's] limited employment history." The district court went on to say, "I believe the post-release supervision provisions provide time for him to make payments on this amount, and I believe that a restitution order should be entered."

The district court ordered Dipman to pay Uribe total restitution of $7,725— $7,525 for the items Uribe testified to at the initial restitution hearing and $200 for the gun the State discussed at the second restitution hearing.

*Is Dipman Entitled to a Nunc Pro Tunc Order Adjusting the Amount of Restitution to $5,525?*

Dipman argues that the district court erred by ordering him to pay $7,725 in restitution; he claims that "the actual amount of incurred expenses was $5,525." He asks this court to remand the case to the district court so that the district court can issue a nunc pro tunc order correcting the restitution amount to $5,525. This argument apparently stems from a transcription error in the transcript from the first restitution hearing. This argument also disregards the district court's inclusion of an additional $200 for restitution for another missing gun that was detailed during the second restitution hearing.

5

The record on appeal contains two transcripts from the first restitution hearing held on August 7, 2017. The first is record volume IX which was filed with the district court on April 19, 2018. The second is record volume XI which was filed on January 4, 2019. This second volume is titled, "Transcript of Sentencing/Restitution Hearing Amended Page 11."

The difference between volume IX and volume XI is that volume XI contains an amended value for one of the missing items. The following is from volume IX:

"Q. Okay. And on the 3,000 rounds of the 30 by 06, do you remember the value of that?
"A. No.
"Q. If I represent to you that you told me and the sheriff *$250*, does that sound correct?
"A. Uh-huh." (Emphasis added.)

Volume XI, on the other hand, reads:

"Q. Okay. And on the 3,000 rounds of the 30 by 06, do you remember the value of that?
"A. No.
"Q. If I represent to you that you told me and the sheriff *$2,250*, does that sound correct?
"A. Uh-huh." (Emphasis added.)

The State did not address this issue in its brief but addressed it in a motion before this court. On January 2, 2019, the State moved to stay its briefing due date before this court. In this motion, the State noted Dipman's argument but stated that the argument was based on a "typographical error" from the hearing transcript. Accordingly, the State requested that this court stay the briefing schedule until a corrected transcript from the hearing was added to the record. In support of this motion, the State produced an e-mail

6

from the court reporter who recorded the August 7, 2017 hearing; in it, the reporter confirms that she committed a transcription error and that the recording of the hearing gives the correct value for the 3,000 rounds of 30-06 ammo as $2,250.

On January 4, 2019, the court reporter filed the corrected transcript with the district court. The district court clerk added this transcript to the record. On January 7, 2019, the State moved to file its brief instanter, telling this court that it had completed its brief with correct citations to the amended transcript. This court granted the State's motion to file its brief instanter on January 7, 2019.

Additionally, Dipman himself acknowledges in his brief that the victim requested restitution for the following items:

- 3,000 rounds of 30-30 ammo, valued at $1,875.
- 3,000 rounds of 30-06 ammo, valued at $250.
- 3,000 rounds of 7.62 by .223 ammo, valued at $1,500.
- A .40 Ruger, valued at $400.
- A Kel-Tec .380, valued at $300.
- A different .380 pistol, valued at $300.
- A 20-gauge shotgun, valued at $200.
- A 9 millimeter Hi Point, valued at $200.
- A .410 Snake Charmer, valued at $500.
- An additional shotgun, valued at $200.

Dipman, however, excluded the $200 shotgun amount from his calculation on appeal when he argued that the correct restitution amount was $5,525.

The amended transcript shows that the correct value for the 3,000 rounds of 30-06 ammo was $2,250. The district court's $7,725 restitution order also properly included an

7

additional $200 for the shotgun as requested by the State. Accordingly, the record shows that the district court's restitution order of $7,725 aligns with the value of the missing or damaged items. Thus, Dipman's argument is meritless.

*Did the District Court Appropriately Determine That Dipman's Burglary Was the Proximate Cause of Uribe's Damages?*

Dipman argues that the district court's restitution order of $7,725 was error because the district court "failed to apply the proximate cause standard for determining whether Mr. Dipman's crime caused the damages complained of by Uribe." He asks that this court remand his case back to the district court for a new restitution hearing.

Appellate courts review district courts' findings about the causal link between the defendant's crime and the victim's loss for substantial competent evidence. *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018).

Under K.S.A. 2016 Supp. 21-6604(b)(1), "the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime, unless the court finds compelling circumstances which would render a plan of restitution unworkable." In *Arnett*, our Supreme Court recently held that "the causal link between a defendant's crime and the restitution damages for which the defendant is held liable must satisfy the traditional elements of proximate cause: cause-in-fact and legal causation." 307 Kan. at 655. Causation-in-fact "requires proof that it is more likely than not that, but for the defendant's conduct, the result would not have occurred." 307 Kan. at 654 (citing *Puckett v. Mt. Carmel Regional Med. Center*, 290 Kan. 406, 420, 228 P.3d 1048 [2010]). Legal causation renders a defendant liable only "when it was foreseeable that the defendant's conduct might have created a risk of harm and the result of that conduct and any contributing causes were foreseeable." *Arnett*, 307 Kan. at 655.

8

Dipman compares this case to *State v. Futrell*, 308 Kan. 128, 418 P.3d 1262 (2018). There, the State charged Futrell with the burglary and theft of money from a victim's car on January 31, 2015, and burglary and theft of money and items from the same victim's house and car again on February 20, 2015. Futrell pleaded no contest to the residential burglary and the remaining charges were dropped. The district court ordered Futrell to pay "$250 for the broken screen door; $680 for the money missing from [the victim's] home and vehicle on February 20, $303.41 for the broken window on [the victim's] vehicle, $6,220 for the cash missing from [the victim's] vehicle on January 31." 308 Kan. at 129-30. This court affirmed the $250 for the screen door damage and the $680 taken from the victim's home and car on February 20, but vacated the restitution for damage to the victim's car and money taken from the vehicle on January 31. 308 Kan. at 130.

Our Supreme Court reversed the portion of this court's opinion affirming the $680 taken from the victim's home and car on February 20. It remanded to the district court for a new restitution hearing applying *Arnett*. *Futrell*, 308 Kan. at 132. Our Supreme Court noted that it could not affirm the district court's restitution award because the district court judge did not explain his reasoning or what causation standard the district court judge used. 308 Kan. at 131. Our Supreme Court also declined to independently apply *Arnett* to the facts of the case. *Futrell*, 308 Kan. at 131. While Futrell pleaded no contest only to residential burglary, the State alleged that part of the missing $680 was taken from the victim's car and the record was unclear whether the car was parked "in a garage attached to the home, on the driveway, or somewhere else." 308 Kan. at 131-32. Thus, our Supreme Court held that it was "not equipped" to consider if the residential burglary caused the loss of the $680. 308 Kan. 132.

On appeal, Dipman argues that the restitution order was error because the district court "failed to conclude that the potential intervening causes of loss to Uribe were

9

foreseeable, or that all losses would not have occurred but for Mr. Dipman's burglary of the garage." The State notes that the district court judge apparently credited Uribe's testimony as to the missing and damaged items over Dipman's testimony that he did not take all the items listed. The State argues that the district court "implicitly made a finding that the actions of the defendant were in fact the proximate cause of the victim's loss." Further, the State argues, the "real issue the defendant has isn't proximate cause, but that the defendant's memory of what he stole differs from what the victim reported as stolen."

The State is correct. Here, Dipman pleaded guilty to one count of nonresidential burglary and one count of felony theft in this case. This case is not like *Futrell*, where it was unclear from the record whether the money taken from the car was included under the umbrella of the residential burglary to which Futrell pleaded no contest. Uribe testified that all of the listed guns and ammo were kept in the garage Dipman pleaded to burglarizing. Eubank testified that Dipman and an accomplice came out of the burglarized garage carrying two armloads each of guns, ammo, and accessories. The only testimony in the record contrary to a finding of causation is Dipman's testimony that he did not take all the guns and ammo alleged. The district court specifically found this testimony was not credible because Dipman was under the influence of drugs when he committed the burglary, the location where the stolen goods were kept was not secure, and Dipman committed the burglary with an accomplice who could have taken the disputed items without Dipman noticing. Further, Dipman himself testified at the restitution hearing that he did not recall exactly how many guns he took from the garage.

We conclude that substantial evidence supports the district court's ruling that Dipman's burglary of the garage was the proximate cause of Uribe's loss of the guns and ammo stored in the garage.

10

*Is the Restitution Amount Workable?*

Dipman next argues that the restitution order is unworkable. Appellate courts review a district court's determination of workability for abuse of discretion. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018). A district court abuses its discretion if it bases its decision on an error of law or fact, or if no reasonable person would agree with the decision. 307 Kan. at 816.

Restitution "is the rule and a finding that restitution is unworkable the exception." *State v. Goeller*, 276 Kan. 578, 583, 77 P.3d 1272 (2003), *overruled on other grounds by State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). Thus, "it is a defendant's burden to come forward with evidence of his or her inability to pay." *Goeller*, 276 Kan. at 583. The workability of restitution is evaluated on a "case-by-case basis." *Meeks*, 307 Kan. at 820.

Here, the full extent of what Dipman's attorney argued about workability is as follows:

"Judge, the last thing I would say, restitution, which I did not say last week. I simply forgot about it. It occurred to me, I think I'm required on behalf of my client to object to restitution on the grounds—and this is just the murkiest of waters—providing good guidance, but I do not believe the Court has entered any findings as to the workability of the restitution payment. And there are a number of cases out there. To just suggest that even though Mr. Dipman's been found guilty and admitted his guilt, he's going to prison, you have a victim who says I'm out, there is a range of findings of which the Court has invalidated some restitution, and the one that comes to mind is a Reno County case, a lot of opinions out of that county where they basically said, this guy can pay restitution for $10 a month, and they did the math and they said that's 70 years, that's observed, and simply left it broad as they kicked it back to the district court and said, You just have to make findings of workability. For my clarity, all likely opinions are denied within Mr. Dipman's rights. It's frankly my hope that after six years of prison, anything I can and should do to make it so he doesn't have creditors coming after him, I certainly

11

owe that to him. I apologize. I did not mean to fail to neglect or neglect to mention that last week, it's just I failed. And because we bifurcated, I had an opportunity to put down in the report. I think where we are at today, I think we're done arguing the restitution issue before the Court, just trying to make the record clear, and can move on to the other sentencing issues."

On appeal, Dipman argues that he "came forward with evidence of his inability to pay. . . through his counsel's argument to the court and through his application for a public defender." Dipman states that his application for a public defender showed he was 18 years old, unemployed, and had no assets or financial obligations. As noted earlier, however, Dipman made no mention of his lack of assets or unemployment below when he objected that the restitution plan was unworkable. His attorney only mentioned that Dipman would be in prison for six years and that "anything I can and should do to make it so he doesn't have creditors coming after him, I certainly owe that to him." Again, the burden to show unworkability is on the defendant. *Goeller*, 276 Kan. at 583.

This case is similar to *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015). There, the district court ordered Alcala to pay $43,230.77 in restitution despite his sentence of life imprisonment without parole for 25 years. 301 Kan. at 834. During the restitution hearing, Alcala did not offer any evidence, but asked the court to take judicial notice of his incarceration. The district court did not find exceptional circumstances rendering the restitution unworkable. On appeal, Alcala argued that the restitution plan was unworkable because of his "lengthy prison sentence and limited earning potential while incarcerated." 301 Kan. at 840. Our Supreme Court rejected this argument, noting that "[h]aving presented no evidence of his inability to pay restitution after his possible parole, Alcala failed to sustain his burden of demonstrating the restitution plan was unworkable." 301 Kan. at 840.

Similarly, here, the district court did not expressly order Dipman to pay restitution while imprisoned. Thus, Dipman's restitution is not due until he is out of prison. See *State*

12

*v. Alderson*, 299 Kan. 148, 151, 322 P.3d 364 (2014). Further, the only argument Dipman made about his ability to pay after prison was that he did not want to be harassed by debt collectors. Thus, it was not an abuse of discretion for the district court to find the restitution plan was workable given Dipman's weak argument about his post imprisonment circumstances.

Before this court, Dipman argues,

"[i]t will be difficult for [him] to obtain employment after 96 months' incarceration without a work history, as a convicted felon, and with no advanced education; let alone for him to obtain work that would pay him more than minimum wage or for more than part-time. As such, the district court abused its discretion by ordering [him] to pay $7,725."

Nevertheless, Dipman failed to make those arguments below. Thus, he is attempting to sandbag his case by presenting one argument to the district court and then arguing for another on appeal. Given that the only arguments Dipman made below pertaining to unworkability were that he was going to prison for six years and did not want to be harassed by creditors, we conclude that the district court did not abuse its discretion by imposing the State's requested restitution amount.

Affirmed.