NOT DESIGNATED FOR PUBLICATION

No. 127,239

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MICHELLE L. KING,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed February 28, 2025. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., MALONE and CLINE, JJ.

PER CURIAM: After she was caught stealing money from her employer, Michelle L. King pled guilty to one count of felony theft. The district court sentenced her to 38 months' imprisonment and ordered her to pay $200,303.54 in restitution for the amount that she stole. On appeal, King argues the restitution order is unworkable because there is no possible way for her to try to pay the award while she is incarcerated; she asks this court to vacate the restitution order and remand with directions for the district court to impose a workable restitution plan. Finding no abuse of discretion based on the arguments King has offered, we affirm the district court's judgment.

1

FACTUAL AND PROCEDURAL BACKGROUND

Between August 2020 and May 2022, King embezzled more than $160,000 from her employer, Anderson-Crain Management LLC (Anderson-Crain), while working as an accountant. The State charged King with one count of felony theft. Under a written plea agreement, in exchange for King's guilty plea, the State agreed not to charge her with fraud/embezzlement in a separate case for taking nearly $40,000 from another company, Valence Surface Technologies. King agreed to accept liability for her actions and to pay restitution to Valence in the amount of $36,659.10 and $163,644.44 to Anderson-Crane and its insurance company, for a total restitution claim of $200,303.54. The plea agreement stated that "[p]ursuant to *State v. Alderson*, 299 Kan. 148[, 322 P.3d 364] (2014), State will ask the court to order unambiguously that [King] be subject to collections on all of the [agreed restitution] amounts during incarceration." The agreement also stated that "[d]efendant is free to argue for dispositional and durational departures and workability, which the State will oppose."

Before sentencing, King moved for a dispositional and/or durational departure. She also filed a "Motion to Modify Restitution and Order a Workable Plan," in which she asked the district court to modify the restitution amount to $100,000 and to implement a payment plan rather than ordering the entire amount due immediately.

At sentencing on December 14, 2023, King agreed with her criminal history score of G and argued in favor of her departure motion. She asserted that her acceptance of responsibility, her family's dependence on her because of her children's health issues, and her husband's role in her offense justified probation or a lesser prison sentence. The State opposed King's departure motion, arguing she had committed a similar offense against another employer and that "[t]he only thing that is going to finally get through to [her], hopefully, is to actually see that there are consequences to these actions."

Finding no substantial and compelling reasons to depart, the district court denied King's departure motion and sentenced her to a 38-month prison term. The district court ordered King pay $200,303.54 restitution to Anderson-Crain, its insurance company, and Valence. King asked the district court to institute a payment plan, arguing that she would not be able to earn income while she was serving her sentence and that her uncertain employment status after serving her sentence would make the award impossible to pay. King also asked the district court to reduce the restitution to $100,000. The State argued that King could not show any substantial and compelling reasons to support her requests and asked the district court to order the full amount of restitution, due immediately. The district court agreed with the State and ordered repayment of restitution to begin immediately, noting that King would be subject to collections during her imprisonment. The district court then listened to King's written statement, read by her attorney, in which King argued for probation so she could work, take care of her family, and pay the restitution. The district court again denied King's motion to modify the restitution award.

The district court filed a journal entry stating King's sentence and the restitution order. The journal entry stated: "The Court finds restitution is immediately due and owing, including when defendant is incarcerated." In a separate order, the district court stated: "After consideration of options, court orders restitution to be sent to collections and repayment to begin immediately." King timely appealed the district court's judgment.

DID THE DISTRICT COURT ABUSE ITS DISCRETION
BY CRAFTING AN UNWORKABLE RESTITUTION ORDER?

King claims the district court's restitution order is unworkable because, as a result of her imprisonment, she will have limited resources and opportunities to earn money and pay the award. King does not challenge the amount of the award. The State maintains that King failed to present compelling evidence of unworkability, arguing the district court

3

did not abuse its discretion because King's reliance on the fact that she will not be employed while she is incarcerated is not a sufficient basis to support her request.

An appellate court reviews a restitution order—both as to its amount and whether its payment is workable—for an abuse of discretion. *State v. Tucker*, 311 Kan. 565, 566, 465 P.3d 173 (2020). A district court abuses its discretion when its decision is based on an error of law, an error of fact, or is otherwise unreasonable. *State v. Meeks*, 307 Kan. 813, 816, 415 P.3d 400 (2018). The party asserting an abuse of discretion has the burden of showing it. *State v. Crosby*, 312 Kan. 630, 635, 479 P.3d 167 (2021).

The statutory authority for a district court to order restitution at sentencing is found at K.S.A. 21-6604(b)(1), which states in part:

> "In addition to or in lieu of any of the above, the court shall order the defendant to pay restitution, which shall include, but not be limited to, damage or loss caused by the defendant's crime. Restitution shall be due immediately unless: (A) The court orders that the defendant be given a specified time to pay or be allowed to pay in specified installments; or (B) the court finds compelling circumstances that would render restitution unworkable, either in whole or in part."

Under this statute, restitution is the rule and is due immediately unless the court sets a payment plan or finds compelling circumstances to render restitution unworkable. Our Supreme Court recently summarized the legal framework for assessing restitution:

> "Kansas statutes provide that restitution shall be imposed and due immediately in criminal cases, unless the district court orders installment payments or finds compelling circumstances that would render restitution unworkable, in whole or part. In other words, restitution is the rule and unworkability is the exception." *State v. Taylor*, 317 Kan. 364, 365, 530 P.3d 431 (2023).

When challenging the workability of a restitution order, the defendant carries the burden to show compelling circumstances that would render restitution unworkable—that is, evidence of their inability to pay. See *Meeks*, 307 Kan. at 820. "To meet that burden, defendants must generally present evidence of their inability to pay at the time the financial obligation is due." *Taylor*, 317 Kan. at 368. If the defendant fails to produce such evidence, a restitution order will be presumed to be workable. 317 Kan. at 368. In considering the fact specific inquiry of unworkability, courts should generally consider the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. *Meeks*, 307 Kan. at 820.

King's argument is straightforward: "Given [her 38-month] prison sentence, the resulting limited opportunities to earn money and [her] limited assets, [the restitution] award is unworkable." King does not allege the district court's decision on restitution was based on an error of fact or law; she simply contends that no reasonable person could agree with it. King's argument essentially boils down to her assertion that being forced to serve her prison sentence renders the restitution order unworkable. But as the Kansas Supreme Court has noted, a "[d]efendant's imprisonment alone is not sufficient to render restitution unworkable." *State v. Alcala*, 301 Kan. 832, 840, 348 P.3d 570 (2015).

King argues that although her income at the time of the hearing was about $4,400 per month, her ability to continue earning that sum was "eviscerated" when the district court sentenced her to prison. But this argument is belied by her own motion to modify the restitution award. In her motion, King acknowledged that she could potentially earn an hourly pay rate while incarcerated which would allow her to "make approximately $21,170 per year." At the sentencing hearing, King's attorney asserted that based on internal policies of the department of corrections, King could earn "up to $21,000 a year." While King stated that serving a prison sentence would "set [her] back to square one[,]" she did not show that it would make the restitution order unworkable.

King also points to her financial obligations to her children as compelling circumstances that the district court unreasonably discounted. And she asserts that her husband's spending habits were somehow responsible for her actions. But the crux of King's argument is not really about her financial situation as much as it appears to focus on her desire to avoid a prison term—in other words, her argument was that she needed to be present for her children, not that she would be unable to pay restitution. A comparison of the monthly expenses King listed in her motion to the district court shows that car payments—for three different vehicles—represented a greater portion of King's budget than her financial obligations to her children. Considering the state of King's finances, it cannot be said that her dependent children, or her allegedly spendthrift husband, constituted compelling circumstances making the restitution award unworkable.

As noted above, in determining whether compelling circumstances exist, a sentencing court must take particular care to address the facts of each case. And "[i]n all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty." *Meeks*, 307 Kan. at 820. King had previously been convicted of a similar theft offense that involved stealing from another employer. In fact, it appears that some of the money she stole in this case was used to pay off her restitution order from that prior offense. Under these circumstances, it cannot be said that no reasonable person would agree with the district court's decision denying King's request to modify the restitution order.

Before closing, we observe that the district court expressly ordered that the restitution award assessed against King "be sent to collections" for immediate payment. Although it is unclear what the district court meant by sending the restitution award "to collections," it appears the court may have been referring to K.S.A. 21-6604(b)(2), providing that a restitution order shall be a civil judgment against the defendant and can be collected in any manner that a civil judgment can be collected. Such an order would be contrary to the holding in *State v. Arnett*, 314 Kan. 183, Syl. ¶ 6, 496 P.3d 928 (2021),

6

decided two years before King was sentenced. In *Arnett*, the defendant argued that a criminal restitution order imposed by a judge without a jury violated the defendant's right to a jury trial under section 5 of the Kansas Constitution Bill of Rights. Our Supreme Court ultimately ruled that a sentencing court's restitution order itself does not violate section 5, but the court struck down the statutes making a restitution order a civil judgment. In fact, K.S.A. 60-4301 et seq.—the statutes governing the enforcement of restitution judgments—were repealed by the Kansas Legislature in 2022. Thus, to the extent the district court intended its restitution order against King to be enforced as a civil judgment, that portion of the order would be null and void. But this analysis does not affect the district court's order that the restitution award assessed against King was due immediately and that she had failed to show that the restitution order was unworkable.

In sum, while the restitution order is for a large sum of $200,303.54 and will likely take King a long time to pay, the order fairly represents the amount that King stole from her employer and another company—an amount that K.S.A. 21-6604(b)(1) instructs she should be ordered to repay. King may not be able to pay much while she is in prison, but her own evidence shows that she can potentially pay some restitution. The district court could have established a payment schedule or allowed specified installments but was not required to do so. Certainly there are no compelling circumstances to lower the restitution amount to $100,000. Given the stringent standard governing the unworkability of restitution plans and the particular circumstances of this case, we conclude the district court did not abuse its discretion in denying King's request to modify the restitution order.

Affirmed.