NOT DESIGNATED FOR PUBLICATION

No. 128,888

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERALD L. WYTCH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER MAGANA, judge. Submitted without oral argument. Opinion filed June 18, 2026. Reversed.

*Andrew J. McGowan*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER, J., and LAURA JOHNSON-MCNISH, District Judge, assigned.

PER CURIAM: Jerald Wytch appeals the district court's imposition of an $18,000 restitution judgment following his guilty plea to aggravated battery. We hold the district court abused its discretion by ordering restitution.

1

In early 2023, Wytch was driving southbound in his Buick Encore. He turned left across the northbound lanes of traffic into a business, failing to notice a motorcyclist proceeding northbound at the same location. The motorcyclist was injured, resulting in broken bones in his wrists and right leg, which required a lengthy hospital stay and multiple surgeries.

In June 2024, the State charged Wytch with felony aggravated battery while driving under the influence and misdemeanor driving without a license. The court subsequently found him to be indigent and appointed a lawyer to represent him.

Wytch later entered into a plea agreement in which he agreed to plead guilty to the felony. In exchange for his plea, the State agreed to recommend that Wytch receive a sentence in the low end of the Kansas Sentencing Guidelines and that Wytch could argue for any lawful disposition, which would include probation. Wytch noted in his plea agreement that he required medication for high blood pressure and HIV. The plea agreement did not mention restitution.

The district court accepted Wytch's plea, finding him guilty, and the State dismissed the other charge. The district court released Wytch from custody pending sentencing on a $100,000 surety bond with a new condition of electronic monitoring and alcohol testing. Wytch agreed to pay a 10% fee for service, or $10,000, to Greenfeather Bail. He paid $5,000 up front by way of cashier's check and agreed to pay the remaining $5,000 at the rate of $125 a week. How he obtained the $5,000 cashier's check is never discussed further by any of the parties or the court.

At a subsequent sentencing and restitution hearing, the victim submitted a claim for restitution of $125,433.81. The State explained that the bulk of the restitution was for

medical bills, as the victim lacked health insurance at the time of the incident. It also included motorcycle replacement parts not covered by insurance, as well as a wheelchair ramp necessitated by the incident. Wytch did not object to the amount of restitution claimed. Instead, he argued that the amount was unworkable as he could not pay that amount or any amount in restitution. In support, his attorney submitted undisputed evidence of Wytch's income and expenses.

Wytch's only source of income was monthly Social Security Disability Insurance (SSDI) payments of $1,658.70. Wytch explained that once he reached retirement age, it became Social Security Income. Defense counsel listed Wytch's monthly expenses as follows:

- $475 - Rent
- $30 - Water and trash
- $170 - Electricity
- $25 - Renters' insurance
- $42 - Phone
- $200 - Groceries
- $200 - Transportation (because he could no longer drive)
- $110 - Signature Loan
- $200 - Electronic monitoring, $56/week rounded down.
- $400 - Bondsman

Total: $1,852.

Counsel told the court that Wytch makes the $400 monthly payments to the bondsman for his $5,000 bond debt. Defense counsel also rounded the weekly cost of the electronic monitoring down to $200. Defense counsel quoted $1,452 as Wytch's total monthly expenses, noting that this amount only includes "normal" expenses, not any

incidentals or "anything that may come up." Counsel explained that given Wytch's age and his current and prior SSDI benefits, defense did not anticipate Wytch's income to increase. Counsel noted that Wytch had no dependents, and his monthly income barely covers his own expenses. For these reasons, counsel argued that restitution would be unworkable for him.

Wytch's attorney highlighted *if Wytch received probation*, he would eventually finish paying the bondsman, freeing up $400 a month. Defense counsel explained that at that rate, it would take over 26 years to pay $125,000 and because, as of sentencing, he was 69 years old, he likely would not live that long. Counsel reiterated that restitution is "simply not workable."

The State added that if pretrial services ceased, the $200 electronic monitoring fee could be freed up for restitution payments. While acknowledging it may be difficult for Wytch to pay, the State emphasized the hardship on the victim, who lacked insurance and was not at fault.

The district court judge noted that, regardless of any sentence, because Wytch's income was solely from SSDI, those funds cannot be garnished, so Wytch would be judgment proof for collection efforts. The judge asked both parties to advise on the matter. The judge shared the concern that "restitution amount arguably is somewhat worthless and only would become a number with no likely means of reflecting it through the court process." The judge suggested that ordering restitution could be seen as an "exercise in futility."

Pointedly inconsistent with his prior statement, the judge acknowledged that there was a strong argument for the workability of the full $125,000 but noted that collection *would depend on means such as probation or parole*, which the court does not necessarily oversee. The judge noted that there is a significant difference between

4

$125,000 and a smaller amount that could realistically be collected, either through probation or post-prison enforcement, and then asked defense counsel to address the argument for a lesser amount.

Defense counsel responded that it is difficult to determine a workable restitution amount because the court could, in theory, keep the client on probation indefinitely until any ordered amount is paid. Even if the restitution were reduced to $50,000, that would not meaningfully change Wytch's ability to pay. Using the previously discussed $400 monthly figure, counsel calculated that the client would pay $4,800 per year and questioned how long it would take to pay $50,000 at that rate, highlighting the impracticality of collection.

The judge asked about the $200 monthly electronic monitoring, and counsel clarified it was $56 weekly, rounded to $200. The judge combined that with the $400 monthly bond payment, noting that the resulting $600 could, "in theory," be considered discretionary income *if the client were on probation* and thus outside the workability analysis. The judge observed that the length of payments would be uncertain but reiterated "it would seem" there is still an argument of "pointlessness from a legal financial collection of a judgment perspective." The judge again, inconsistently, noted that "there is a difference between 125, *which probably is workable*, but some lesser amount would seem to be *more workable*, in theory." (Emphasis added.)

Defense counsel reiterated that Wytch's ability to pay restitution depended in part on whether he received probation. Assuming probation, counsel contemplated whether payments would start at $100 per month and then increase to $600 once the bondsman was paid but noted that alcohol monitoring could continue due to the DUI and that many other factors made it difficult to determine an appropriate monthly amount, so counsel could not provide a definitive answer.

5

Defense counsel emphasized that Wytch's ability to pay and the duration of probation are what ultimately matter. Counsel stressed that Wytch did not dispute owing the debt, but he "can't give [the victim] what he doesn't have."

The district court moved to sentencing. Wytch asked for probation. Counsel argued that, due to Wytch's age and limited financial means, his ability to pay restitution is low and he is unlikely to ever repay the full amount. Counsel expressed concern that the victim may expect full repayment, which is unrealistic given Wytch's circumstances and life expectancy. Counsel argued that probation would allow the court to supervise Wytch, require alcohol monitoring, and ensure he makes some monthly payments, whereas a prison sentence would effectively render restitution uncollectible.

The district court judge clarified that, if Wytch were sent to prison, the court would order a restitution amount that becomes a judgment, but the court would not be involved in collecting it. The judge emphasized that collection is a separate matter outside the court's role. Defense counsel consistently advocated probation, emphasizing that it would allow the court to supervise Wytch and ensure the victim receives some payment. Counsel stressed that setting a specific judgment amount is unworkable and that establishing a monthly payment through probation is better, since full repayment is unlikely.

The district court asked about Wytch's driver's license and transportation costs and also questioned why he had not resumed drug treatment after being arrested. Wytch explained that he could not continue the treatment because he lacked the financial resources.

The district court sentenced Wytch to 31 months in prison and 24 months of postrelease supervision and ordered $18,000 in restitution, finding, contrary to his previous statements, that the full $125,000 amount was unworkable.

The court reasoned that Wytch could potentially pay about $500 per month—based on reduced expenses such as the end of alcohol monitoring and eventual completion of bondsman payments—amounting to $6,000 per year over roughly three years. Because Wytch was not placed on probation, the court could only set a total restitution amount rather than monthly payments. Although the court acknowledged that collection was likely futile due to Wytch's disability, it concluded that $18,000 was a fair, minimal, and legally appropriate amount, noting that some payments might also come from prison earnings. The district court did not discuss what additional fees may be imposed for Wytch's period of postrelease supervision. See K.S.A. 22-3717(m), (o).

Wytch timely appeals.

ANALYSIS

*Wytch preserved his argument that any amount of restitution was unworkable.*

On appeal, Wytch argues that the district court erred when it imposed restitution of $18,000 given that Wytch was 69 years old and had a fixed income. Wytch contends that this issue is preserved because he consistently argued to the district court that it should not impose any restitution given Wytch's income and age because it would be unworkable.

The State counters that this issue is not preserved for review, because Wytch failed to object to the restitution award in the district court. The State contends that, although Wytch argued the court should not impose restitution due to his income and age, he only challenged the original $125,000 request as unworkable. In response, the district court considered his arguments and reduced the restitution amount to $18,000. Wytch, however, did not object to the $18,000 restitution award as unworkable.

7

This court exercises unlimited review over whether an issue is properly preserved for appellate review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

The State's argument elevates form over substance. Wytch consistently argued that any restitution was unworkable given his financial circumstances, specifically challenging the $125,000 request and a "*lesser amount*." (Emphasis added.) While he also suggested $25 per month—$300 per year—this drastically lower figure implicitly establishes that any amount significantly above that, including the $18,000 ordered, would be unworkable. Requiring a renewed objection imposes an overly technical preservation requirement, as the court had considered and rejected his core argument to both $125,000 and a "lesser amount." For this reason, we find Wytch properly preserved his claim regarding the unworkability of restitution for appeal.

*The district court erred in imposing an unworkable restitution amount.*

The district court ordered Wytch to pay $18,000 in restitution upon his release from prison under K.S.A. 21-6604(b)(1).

On appeal, Wytch does not dispute the amount owed, only that the district court erred in ordering restitution because the restitution plan is unworkable. Wytch argues he met his burden and established that he would not be able to pay anything in restitution once he was released on postrelease supervision.

*Courts evaluate the unworkability of a restitution plan on a case-by-case basis.*

Kansas statutes do not define "unworkable," leaving courts to evaluate the unworkability of a restitution plan on a case-by-case basis. *State v. Meeks*, 307 Kan. 813, 820, 415 P.3d 400 (2018); see K.S.A. 21-6604(b)(1) ("If the court finds restitution

8

unworkable, either in whole or in part, the court shall state on the record in detail the reasons therefor.").

That said, our Supreme Court in *Meeks* provided:

"District courts should use this flexible guideline to evaluate each defendant's unique circumstances before deciding whether the defendant has shown a plan would be unworkable. Some of the factors relevant to the court's inquiry will be the defendant's income, present and future earning capacity, living expenses, debts and financial obligations, and dependents. In some circumstances, the amount of time it will take a defendant to pay off a restitution order will also be relevant, especially if the defendant is subject to probation until the restitution is paid in full. In all circumstances, the district court should keep in mind the ultimate goals of restitution: compensation to the victim and deterrence and rehabilitation of the guilty." 307 Kan. at 820.

*We review the court's restitution order for an abuse of discretion.*

Restitution is the rule and a finding that restitution is unworkable is the exception. *Meeks*, 307 Kan. at 816-17; K.S.A. 21-6604(b)(1) ("[T]he court shall order the defendant to pay restitution . . . unless . . . the court finds compelling circumstances that would render restitution unworkable, either in whole or in part."). But restitution can be denied if the district court finds that a restitution plan is unworkable. See K.S.A. 21-6604(b)(1).

This court reviews whether a plan of restitution would be unworkable for an abuse of discretion. *Meeks*, 307 Kan. at 816. Judicial discretion is abused if no reasonable person would agree with the decision or if the decision is based on an error of law or fact. 307 Kan. at 816.

The burden is on the defendant—in this case, Wytch—to present evidence of compelling circumstances to prove that the restitution plan is unworkable. See *State v.*

9

*Tucker*, 311 Kan. 565, 568, 465 P.3d 173 (2020); K.S.A. 21-6604(b)(1)(B). When a defendant fails to present evidence before the district court regarding his or her ability to pay restitution, the defendant does not meet this burden, and the district court's order of restitution will not be set aside on appeal. *State v. King*, 288 Kan. 333, 358, 204 P.3d 585 (2009).

We begin by examining whether the district court made a factual error, a legal error, or acted unreasonably in ordering Wytch to pay restitution.

*The district court's calculation justifying an award of restitution contained a factual error.*

At the outset, and as Wytch correctly notes, the district court's calculation of his income was incorrect, and the State commits a similar error in its briefing.

The district court's analysis was flawed because it understated Wytch's actual expenses. At the time of the hearing, the undisputed record shows that Wytch's monthly expenses were $1,852, which after applying his monthly income of $1,658, resulted in a deficit of $194. The actual cost of his monitor was $242 ($56/week, 56 x 4.33), but because Wytch never asked for any credit other than $200 per month, we are bound by his concession.

Applying the district court's analysis to Wytch's actual total undisputed monthly expenses of $1,852 and subtracting the $600 in temporary obligations (bond and monitoring) but not the $110 loan payment, leaves $1,252 in remaining expenses. Adding a $500 restitution payment brings his total monthly obligations to $1,752—exceeding his income and creating a deficit. Thus, the court's conclusion that Wytch could afford $500 per month was based on incorrect math and does not reflect his actual financial circumstances. The district court's workability determination, therefore, rested on an

10

incorrect understanding of Wytch's monthly expenses. This was factual error. See *State v. Taylor*, 317 Kan. 364, 368, 530 P.3d 431 (2023) ("A factual error is an abuse of discretion when the record does not support a factual finding on which a legal conclusion or an exercise of discretion is based.").

> *The State does not respond to Wytch's claim that the district court made a legal error.*

Wytch argues that the district court treating his $200 monthly monitoring fee and $400 bond payments as "outside" the workability analysis is contrary to *Meeks*, which requires considering debts when assessing a defendant's ability to pay. At sentencing, he had only partially paid the $5,000 due the bonding company and would not begin receiving Social Security payments until after release, making full repayment unlikely. According to Wytch, this was legal error, therefore the district court abused its discretion. The State does not respond. See *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021) (An issue not briefed is considered waived or abandoned.).

> *The district court's decision was unreasonable.*

> a. *The district court excluded existing debts, relied on speculative future income, and assumed fixed debts.*

Wytch is correct that "unworkability should be evaluated on a case-by-case basis." *Meeks*, 307 Kan. at 820.

Treating future debts as income is speculative. Wytch was 69 years old on his "sentence begins date." He received a 31-month sentence and 24 months of postrelease supervision. Assuming no good time credit, he will be 72 when he is released from prison. Wytch owes a debt to the bondsman and cannot resume payments until his release—when the judgment also becomes due. But the district court relied on funds that

11

were neither presently nor reasonably available in the near future. See *State v. Jamerson*, 54 Kan. App. 2d 312, 317, 399 P.3d 246 (2017) ("When a district court does not make it clear that restitution is payable immediately, restitution does not become due until the prisoner against whom the judgment is entered is released from prison.").

The district court's calculation also assumes Wytch can secure housing at $475 per month upon release, all his debts are paid, and all his utilities and other bills remain fixed, highlighting how tenuous and unrealistic the district court's workability analysis is.

By excluding existing debts while simultaneously relying on speculative future income and assuming fixed debt, the court's analysis was inconsistent with *Meeks* and unreasonable. See 307 Kan. at 820.

   b.   *The district court acknowledged that the restitution would never be*
        *paid, particularly if Wytch was not granted probation.*

The burden is on a defendant to present some evidence of compelling circumstances to prove the restitution is unworkable. Wytch informed the district court that he had received SSDI, did not anticipate his income increasing soon, and never suggested that he would be able to work. See *State ex rel. Moeller v. White*, 42 Kan. App. 2d 756, 758, 216 P.3d 727 (2009) (To qualify for SSDI, one must have a physical or mental condition that prevents one from engaging in "'substantial gainful activity'" and that condition must be expected to last at least 12 months or to result in death.).

It is clear from his many statements from the bench, the district court judge believed Wytch. He acknowledged Wytch's disability stating "[a]ny collection efforts, as I stated a couple times today, are, in my opinion, likely to be pointless based upon his disability status." A review of the record shows that the district court judge acknowledged the likely futility of collecting restitution. Therefore, the judge recognized

that the restitution order was effectively uncollectible, suggesting it more as a symbolic gesture than a workable plan for repayment.

In *Tucker*, the Kansas Supreme Court likewise relied on the district court's comment that it understood that the restitution "'will never be paid'" to find that the defendant satisfied his burden. 311 Kan. at 568. In fact, the judge here went even further by noting that Wytch argued that he may be able to make some payments if placed on probation. But the court concluded that no payment is likely to occur short of an order of probation and "probation is not an appropriate sentence in this case."

Finding that restitution was workable in this case, despite the evidence and court's comments to the contrary, was unreasonable.

CONCLUSION

Restitution payments may be excused based on a defendant's financial inability to pay. *State v. Schulze,* 267 Kan. 749, 753, 985 P.2d 1169 (1999) (affirming the district court's conclusion that compelling financial circumstances existed and necessitated relief). That said, the fact that a defendant is without financial resources at the time of sentencing is not itself a bar to a restitution order. *United States v. Olson*, 104 F.3d 1234, 1237 (10th Cir.1997). Courts look to whether there is any future earning potential. And while poverty alone is not *always* a "compelling circumstance that should relieve a defendant of the obligation to pay restitution," poverty alone can justify a decision not to impose restitution. *State v. Herron*, 50 Kan. App. 2d 1058, 1064, 335 P.3d 1211 (2014).

This is no doubt frustrating for injured victims. Here the victim is left with the sole financial responsibility and physical and emotional scars from an irresponsible act by a drunk driver.

13

Yet we are bound by the rule of law. Wytch met his burden to present evidence of compelling circumstances to prove the restitution plan ordered by the district court here is unworkable. Wytch relies on SSDI, is aging, and was able to establish, with little or no contrary evidence presented by the State, that he does not have the possibility of making payments upon release from prison. Due to his physical condition, he established that he has no future earning potential. Under these circumstances, we hold the district court abused its discretion by imposing an unworkable order of restitution.

The order of restitution is reversed.

Reversed.